1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

JAMES WILSON, an individual,
10  and JACK WHITE and RITA
WHITE, a married couple,
11  on behalf of themselves
and all others similarly
12  situated,

13                                    NO. CIV. S-12-0568 LKK/GGH
          Plaintiffs,
14

      v.
15                                    O R D E R
METALS USA, INC., a Delaware
16  Corporation; R. ALLAN REID,
an individual and DOES 1-100,
17  inclusive,

18
          Defendants.
19  _____/

20       Jack  Wilson,  Jack  White,  and  Rita  White  are  the  named

21  plaintiffs  in  this  putative  consumer  class  action,  which  seeks

22  damages  for  defective  home  roofing  tiles.[1]  Their  First  Amended

23  Complaint  ("FAC")  alleges  five  causes  of  action:  (1)  fraudulent

24  concealment/non-disclosure,  (2)  breach  of  express  warranties,

25  _____

26       [1] No  class  certification  hearing  has  been  held  yet.

                              1

(3) breach of written warranties under the federal Magnuson-Moss Warranty Act, (4) violations of California's Consumer Legal Remedies Act, and (5) violations of Cal. Bus. & Prof. Code § 17200.

Defendant R. Allan Reid moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(2). Defendant Metals USA, Inc. moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(6). The motions came on for hearing on October 1, 2012. Having considered the matter, for the reasons set forth below, (i) as to Reid's motion, the court seeks additional briefing on two point of law, and (ii) as to Metals USA's motion, the court will grant defendant's motion to dismiss without prejudice, while permitting plaintiffs to conduct limited discovery as described below.

**I. FACTS**

**A. Dura-Loc and the Tiles**

In 1992, Dura-Loc Roofing Systems Limited ("Dura-Loc") began selling roofing products to consumers in the United States, including California.[2] (FAC 8.) This lawsuit concerns alleged defects in several product lines of stone-coated steel roof shingles sold by Dura-Loc ("Tiles"). (FAC 1.)

Plaintiffs allege on information and belief that the Tiles were coated with "Colorquartz"-brand granules manufactured by 3M Corporation. (FAC 8, 14.) Plaintiffs allege on information and

---

[2] Plaintiffs do not identify the jurisdiction in which Dura-Loc was organized, but as they allege that its successor entity, 604471 Ontario Inc., has since sought bankruptcy protection in Ontario, Canada, the court infers that Dura-Loc was a Canadian corporation.

2

1  belief that, no later than January 1993, 3M had warned Dura-Loc
2  that Colorquartz granules were translucent, would allow ultraviolet
3  ("UV") rays to penetrate to the surface of roofing tiles, and due
4  to their translucent qualities, should not be used as a surfacing
5  coating on roofing products. (FAC 8, 9, 14.)

6  These warnings were reiterated in a technical bulletin
7  released by 3M, dated January 1995, which stated that Colorquartz
8  "is not suitable for applications that require protection of a
9  substrate material from ultraviolet exposure." (FAC 15.)

10  Plaintiffs allege on information and belief that, despite 3M's
11  warning, Dura-Loc manufactured and sold Tiles covered with
12  Colorquartz surface coating granules. (FAC 8, 13.)

13  Plaintiffs allege on information and belief that Dura-Loc's
14  use of Colorquartz granules allows UV rays to penetrate to the
15  surface of the Tiles, which in turn causes the bonding material
16  that binds the surface coating to the Tiles to deteriorate,
17  degrade, and separate from the Tiles. As a result, the Tiles lose
18  their coating and their granular texture, and are left with a
19  discolored appearance. (FAC 14.)

20  Plaintiffs allege on information and belief that Dura-Loc
21  advertised, marketed, sold, and warranted the Tiles in California
22  from 1992 to 2006. (FAC 2, 8.)

23  Dura-Loc represented that, for a period of 25 years after
24  installation, the Tiles would be UV-resistant and free of
25  manufacturing defects. (FAC 15.)

26  ////

**B. Named plaintiffs**

On or about June 2004, plaintiff James Wilson, a resident of Roseville, California, and plaintiffs Jack and Rita White, residents of Orangevale, California, purchased Tiles through All American Roofing, Inc., a reseller of the Tiles. All American Roofing provided Wilson and the Whites with sales materials that were written, approved, and distributed by Dura-Loc in order to market, advertise, and sell the Tiles. These sales materials represented that, for a period of 25 years after installation, the Tiles would be UV-resistant and that their appearance would not deteriorate so as to substantially affect roof appearance. (FAC 5-7, 13.)

Both Wilson and the Whites purchased the Tiles in reliance on these representations. (FAC 6, 8.)

On or about April 2009, the Whites noticed for the first time that the Tiles they had purchased for their roof were deteriorating. Specifically, the Tiles were losing their stone coating, granular texture, and aggregate and acrylic coating. As of the time of the filing of the FAC, the Whites' tiles had lost most of their original color, coating, and texture. (FAC 7.)

On or about June 2011, Wilson noticed for the first time that the Tiles he had purchased for his roof were deteriorating, losing their stone coating, granular texture, and aggregate and acrylic coating. As of the time of the filing of the FAC, Wilson's tiles had lost most of their original color, coating, and texture. (FAC 6.)

4

1    Dura-Loc at no time disclosed to plaintiffs or the putative

2  class that the Tiles were not UV-resistant and that they contained

3  an inherent defect. (FAC 15.)

4  **C. Metals USA's purchase of Dura-Loc assets**

5    Plaintiffs allege on information and belief that, on or about

6  2005, Dura-Loc became "acutely aware" that the Tiles' inherent

7  defect was beginning to manifest, as Dura-Loc received (i) an

8  unusually large number of warranty claims to repair or replace

9  Tiles, and (ii) numerous complaints regarding separation of surface

10  granules from the Tiles and discoloration of the Tiles. (FAC 9.)

11    On or about May 2006, Defendant Metals USA, Inc. ("Metals

12  USA"), a Delaware corporation, purchased all of Dura-Loc's assets

13  for $9.4 million. (FAC 8.)

14    The purchase price was nearly $2 million less than Dura-Loc's

15  sales for the previous fiscal year, which totaled $11.3 million.[3]

16  (FAC 3.)

17    In its Form 10-Q filed with the U.S. Securities and Exchange

18  Commission for the quarterly period ending August 15, 2011, Metals

19  USA stated that its Building Products group "recorded a gain of

20

21       [3] Plaintiffs allege this fact without qualification on page
    3 of the FAC, and then allege it on information and belief on page
22  9, so that the court is unable to determine the actual state of
    plaintiffs' knowledge as to this fact.
23       Adding to the court's confusion is the fact that the entire
    FAC is pleaded on information and belief. The court is willing to
24  infer that this wholesale pleading on information and belief was
    an error, given that many individual allegations are also so
25  pleaded. But any future complaint filed in this action should
    comply with federal pleading standards governing allegations made
26  on information and belief, particularly when alleging fraud.

approximately [$700,000] resulting from a settlement with the previous owners of the Dura-Loc...to cover pre-acquisition warranty claims." (FAC 4.)

Plaintiffs allege on information and belief that under the purchase agreement, Metals USA did not expressly assume any of the warranty obligations or liabilities of Dura-Loc. (FAC 9.)

On or about July 1, 2007, Metals USA created a wholly-owned subsidiary known as Metals USA Building Products Canada, Inc., which does business as Allmet Roofing Products. (FAC 8.)

**D. Formation of 604471 Ontario, Inc.**

After the sale, Dura-Loc ceased manufacturing, marketing, and selling the Tiles, and changed its name to 604471 Ontario, Inc. (FAC 8, 9.) Plaintiffs allege on information and belief that 604471 Ontario, Inc. maintains the same owners, board of directors, and executives as Dura-Loc, but is now a non-operating company that currently exists for the sole purpose of receiving, evaluating, ad paying warranty claims on the Tiles. (FAC 9.)

Plaintiffs allege on information and belief that 604471 Ontario was inadequately capitalized: specifically, that it was formed with, and maintained, insufficient funds to honor its warranty obligations. (FAC 11.)

On or about April 2012, 604471 Ontario, Inc. filed for bankruptcy in the province of Ontario. In its bankruptcy filing, the corporation represented that it had assets totaling $56,265 and liabilities totaling approximately $2,000,000. (FAC 9.)

////

**E. Defendant Reid**

Plaintiffs allege on information and belief that defendant Reid was the founder, owner, president, and majority shareholder of both Dura-Loc and Metals USA. (FAC 10.)

Plaintiffs allege on information and belief that Reid "exercised significant individual control over the design, engineering, development, manufacture, marketing, and selling of the Tiles." (FAC 10.)

Reid approved or directed Dura-Loc to engage in a scheme to induce consumers to purchase the Tiles by omitting the fact that the Tiles were manufactured with an inherent defect. (FAC 11.) At all relevant times, Reid knew of the omission in Dura-Loc's advertising, and knew it was unlawful for Dura-Loc to represent that the Tiles were UV-resistant and free from defects. (FAC 11.)

Plaintiffs allege on information and belief that Reid maintains sole authority with respect to the business decisions of 604471 Ontario, Inc., including whether to pay or deny warranty claims on the Tiles. (FAC 10.)

**F. Further allegations**

Plaintiffs do not allege any fraudulent conduct on the part of Metals USA, except for one statement, alleged on information and belief, that "Dura-Loc and Defendant Metals USA entered into this purchase transaction with the intent to escape Dura-Loc's liability and warranty obligations for the Tiles which is evidenced by...." (FAC 4, 9.)

Plaintiffs do not allege that Metals USA continued to

1  advertise, market, sell, or warrant the Tiles after purchasing

2  Dura-Loc's assets.

3      Plaintiffs do not allege that the defects in the Tiles caused

4  damage to any property other than the Tiles themselves.

5      Plaintiffs do not allege that the defects in the Tiles caused

6  injury to any person.

7  **II. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)**

8      Reid moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(2)[4]

9  on the grounds that the court lacks personal jurisdiction over him

10  in this matter.

11  **A. Standard**

12      When a defendant challenges the sufficiency of personal

13  jurisdiction under Rule 12(b)(2), the plaintiff bears the burden

14  of establishing that the exercise of jurisdiction is proper.

15  Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1194 (9th Cir.

16  1988).

17      Analysis of the appropriateness of the court's personal

18  jurisdiction over a defendant in a case in which the court

19  exercises diversity jurisdiction is resolved under California's

20  long arm statute. Aanestad v. Beech Aircraft Corp., 521 F.2d 1298,

21  1300 (9th Cir. 1974). The statute authorizes the court to exercise

22  personal jurisdiction on any basis consistent with the due process

23  clause of the United States Constitution. Cal. Code Civ. Proc. §

24  410.10; Rocke v. Canadian Auto Sport Club, 660 F.2d 395, 398 (9th

25  ────────────────

26  [4] Hereinafter, the term "Rule" refers to the applicable Federal Rule of Civil Procedure.

1  Cir. 1981).

2      Consistent with the due process clause, the court may exercise

3  personal jurisdiction over a defendant when the defendant has

4  certain minimum contacts with the forum state such that the

5  maintenance of the suit does not offend traditional notions of fair

6  play and substantial justice. International Shoe Co. v. Washington,

7  326 U.S. 310, 316 (1945). If the defendant's activities there are

8  "substantial," or "continuous and systematic," a federal court can

9  exercise general personal jurisdiction as to any cause of action

10  involving the defendant, even if unrelated to the defendant's

11  activities within the state. Perkins v. Benguet Consolidated Mining

12  Co., 342 U.S. 437 (1952); Data Disc, Inc. v. Systems Technology

13  Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

14      If a non-resident defendant's contacts with California are not

15  sufficiently continuous or systematic to give rise to general

16  personal jurisdiction, the defendant may still be subject to

17  specific personal jurisdiction on claims arising out of defendant's

18  contacts with the forum state. Burger King Corp. v. Rudzewicz, 471

19  U.S. 462, 477-78 (1985); Haisten v. Grass Valley Medical

20  Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). The

21  court employs a three-part test to determine whether the exercise

22  of specific jurisdiction comports with constitutional principles

23  of due process. Gray & Co. v. Firstenberg Machinery Co., 913 F.2d

24  758 (9th Cir. 1990); Haisten, 784 F.2d at 1397; Data Disc, 557 F.2d

25  at 1287. First, the defendant must "purposefully avail" himself of

26  the privilege of conducting activities in the forum, thereby

1   invoking the benefits and protections of its laws.[5] Second, the

2   claim must arise out of the defendant's forum-related activities,

3   and third, the exercise of jurisdiction must be reasonable.

4   Haisten, 784 F.2d at 1397. The plaintiff bears the burden of

5   satisfying the first two prongs; if it does so, the burden shifts

6   to the defendant to set forth a "compelling case" that the exercise

7   of jurisdiction would not be reasonable. Sher v. Johnson, 911 F.2d

8   1357, 1361 (9th Cir. 1990); Burger King, 471 U.S. at 477-78.

9       In determining whether the claim arises out of the defendant's

10  forum-related activities, the Ninth Circuit applies a

11  "but for" test: if plaintiff's injury would not have occurred but

12  for defendant's forum-related activities, the claim arises out of

13  those activities. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir.

14  1995). However, where defendant only has isolated contact with the

15  forum state, a high degree of relationship must be shown, i.e. the

16  cause of action must arise out of that particular purposeful

17  contact. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).

18      If a nonresident has purposefully availed himself of the

19  privilege of doing business in California, thus invoking the

20  benefits and protections of its laws, the burden is on the

21

22      [5] The Ninth Circuit views the Supreme Court's recent decision
    in J. McIntyre Machinery, Ltd., v. Nicastro, __ U.S. __, 131 S.Ct.
23  2780 (2011) (refusing to uphold personal jurisdiction over foreign
    manufacturer that delivered products generally to the U.S. without
24  directly targeting the forum state through local distributors or
    activities) as consistent with the line of cases finding specific
25  jurisdiction when there has been purposeful direction of products
    or activities to the forum state. See Mavrix Photo, Inc. v. Brand
26  Technologies, Inc., 647 F.3d 1218, 1227-1228 (9th Cir. 2011).

defendant to show that exercise of jurisdiction does not comport with "fair play and substantial justice," and is therefore unreasonable. <u>Burger King</u>, 471 U.S. at 476. To determine whether the exercise of specific personal jurisdiction over a defendant would be "reasonable", the court examines seven factors: 1) the extent of defendant's purposeful interjection into the forum;[6] 2) the burden of defending the suit in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in the dispute; 5) the most efficient forum for judicial resolution of the dispute; 6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. <u>Gray & Co.</u>, 913 F.2d at 761.

The unique burdens on a foreign national defendant of defending itself in the local forum "should have significant weight" in assessing the reasonableness of personal jurisdiction. <u>Asahi Metal Industry Co., Ltd. v. Superior Court</u>, 480 U.S. 102 (1987). In addition, litigation against an alien defendant creates a higher jurisdictional bar due to concerns of conflict with the sovereignty of the foreign state. <u>Id.</u> at 115. However, "the factor of conflict with the sovereignty of the defendant's state 'is not dispositive, because if given controlling weight, it would always

---

[6] The Ninth Circuit gives this factor no weight once it is established that the defendant purposefully availed itself of the privilege of conducting business of the state, thereby invoking the benefits and protections of its laws. <u>Sinatra v. National Enquirer, Inc.</u>, 854 F.2d 1191, 1199 (9th Cir. 1988).

1  prevent suit against a foreign national in a United States court.'"

2  <u>Sinatra</u>, 854 F.2d at 1199 (quoting <u>Gates Learjet Co. v. Jensen</u>, 743

3  F.2d 1325, 1333 (9th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1066

4  (1985)).

5  **B. Analysis**

6      **1. Can the court exercise personal jurisdiction over Reid as**

7         **an individual defendant?**

8      Defendant Reid moves to dismiss under Rule 12(b)(2), arguing

9  that he is not subject to the court's personal jurisdiction.

10 Although Reid is the moving party, plaintiffs are the parties who

11 invoked the court's jurisdiction and therefore bear the burden of

12 proof on the necessary jurisdictional facts. <u>Rio Properties, Inc.</u>

13 <u>v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1019 (9th Cir. 2002).

14     As no evidentiary hearing has been held on these facts,

15 plaintiffs "need only make a prima facie showing of jurisdiction

16 to avoid [Reid's] motion to dismiss." <u>Harris Rutsky & Co. Ins.</u>

17 <u>Services, Inc. v. Bell & Clements Ltd.</u> (9th Cir. 2003) 328 F3d

18 1122, 1129. A "prima facie" showing must demonstrate facts that,

19 if true, would support jurisdiction over the defendant. <u>Id.</u>

20 Ordinarily, the plaintiffs' version of the facts is taken as true,

21 and conflicts between sworn affidavits are resolved in the

22 plaintiffs' favor. <u>Id.</u>

23     Here, while Reid has submitted a declaration in support of his

24 motion (Docket no. 22-1), plaintiffs rely solely on the unverified

25 FAC in their opposition. The court cannot assume the truth of

26 allegations in a pleading, such as the FAC, that are contradicted

12

by a sworn declaration. "If only one side of the conflict [over personal jurisdiction] was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit." Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1284. Similarly, the court "need not consider merely conclusory claims, or legal conclusions in the complaint as establishing jurisdiction." NuCal Foods, Inc. v. Quality Egg LLC, __ F.Supp.2d __, 2012 WL 3528162 (E.D.Cal. 2012) (Mueller, J.) (citations omitted). Therefore, the court will consider well-pleaded facts in the FAC in determining whether plaintiffs have made a prima facie showing of jurisdiction. But where the facts in Reid's declaration directly contradict those pleaded in the FAC, the court must accept the truth of Reid's declaration.

On the facts presented, the court cannot exercise personal jurisdiction over Reid on the grounds of physical presence, domicile, or consent. Reid was not personally served with process in California. (Reid Dec., Docket no. 22-1, ¶ 4.) He has never resided in California, and there is no evidence to suggest he intends to in the future. (Id. ¶ 4.) Finally, there is no evidence to suggest that Reid has consented, contractually or otherwise, to the court's jurisdiction.

The court also cannot exercise general personal jurisdiction over Reid. Such an exercise of jurisdiction would require that Reid have conducted "substantial" or "continuous and systematic" activities in the state. Data Disc, 557 F.2d at 1287. Reid's

declaration provides that he is a Canadian citizen and a lifelong resident of the Province of Ontario, and that he has never been a California resident. (Reid Dec., Docket no. 22-1, ¶¶ 2, 7.) He has never filed a California state income tax return, nor does he own, lease, or maintain any property in the state. (Reid Dec., Docket no. 22-1, ¶¶ 9, 10.) Reid's only contacts with the state have been (i) approximately three business trips per year when he was Dura-Loc's president, and (ii) for personal vacations. Therefore, absent an affidavit to the contrary by plaintiff, Reid's contacts with the state can be presumed neither "substantial" nor "continuous and systematic." (Reid Dec., Docket no. 22-1, ¶ 4.) The court cannot establish general personal jurisdiction over Reid.

The question then becomes whether the court can assert specific personal jurisdiction over Reid on claims arising out of his contacts with California. Plaintiffs begin by alleging that Dura-Loc is subject to personal jurisdiction in California. (Plaintiff's Opp., Docket no. 23, at 6-7.) Dura-Loc advertised, marketed, sold, and warranted the Tiles to California residents — despite knowing that the Tiles were defective. In so doing, plaintiffs claim, Dura-Loc "purposefully availed" itself of the privilege of conducting business in California, thereby invoking the benefits and protections of California's laws, and satisfying the first prong of the specific jurisdiction test. Haisten, 784 F.2d at 1397. Moreover, plaintiffs' claims arise out of these forum-related activities, satisfying the second prong. Id. Defendants, in turn, do not argue that exercise of personal

1    jurisdiction over Dura-Loc would be unreasonable, thereby
2    satisfying the third prong. Id.

3        Plaintiffs conclude by arguing that, since Dura-Loc is subject
4    to the court's jurisdiction, Reid, as Dura-Loc's alter ego, is as
5    well. The parties then address most of their briefing to the
6    question of whether plaintiffs have made out a case for alter ego
7    liability.

8        The court is concerned, however, that neither Dura-Loc nor
9    604471 Ontario is a defendant in this action, and therefore seeks
10   further briefing from the parties on the following questions:

11       1. Can the court exercise personal jurisdiction over an
12   individual shareholder and officer of a corporation (Reid) under
13   an alter ego theory if the corporation itself (Dura-Loc, and later,
14   604471 Ontario) is not a party to the action?

15       2. If the corporation is in fact a necessary party, may Dura-
16   Loc's actions be imputed to 604471 Ontario for purposes of the
17   exercise of personal jurisdiction?

18       A briefing schedule for the parties is set forth at the end
19   of this order. To be clear, no additional briefing is sought as to
20   (i) the choice-of-law or applicable standard for alter ego
21   liability or (ii) whether plaintiffs have properly pleaded Reid's
22   alter ego liability under such a standard. The parties' briefing
23   is to focus on the questions raised above.

24   **III. MOTION TO DISMISS UNDER FED R. CIV. P. 12(b)(6)**

25   **A. Standard**

26       A dismissal motion under Rule 12(b)(6) challenges a

1    complaint's compliance with the federal pleading requirements.

2    Under Rule 8(a)(2), a pleading must contain a "short and plain

3    statement of the claim showing that the pleader is entitled to

4    relief." The complaint must give the defendant "'fair notice of

5    what the ... claim is and the grounds upon which it rests.'" Bell

6    Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v.

7    Gibson, 355 U.S. 41, 47 (1957).

8         To meet this requirement, the complaint must be supported by

9    factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129

10   S.Ct. 1937 (2009). Moreover, this court "must accept as true all

11   of the factual allegations contained in the complaint." Erickson

12   v. Pardus, 551 U.S. 89, 94 (2007).[7]

13        "While legal conclusions can provide the framework of a

14   complaint," neither legal conclusions nor conclusory statements are

15   themselves sufficient, and such statements are not entitled to a

16   presumption of truth. Iqbal, 556 U.S. at 678. Iqbal and Twombly

17   therefore prescribe a two-step process for evaluation of motions

18   to dismiss. The court first identifies the non-conclusory factual

19   allegations, and then determines whether these allegations, taken

20   as true and construed in the light most favorable to the plaintiff,

21   "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S.

22

23        [7] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
     U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24   are dismissals based on a judge's disbelief of a complaint's
     factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
25   (1974) ("it may appear on the face of the pleadings that a recovery
     is very remote and unlikely but that is not the test" under
26   Rule 12(b)(6)).

1  at 664.

2  "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

3  refer to the likelihood that a pleader will succeed in proving the

4  allegations. Instead, it refers to whether the non-conclusory

5  factual allegations, when assumed to be true, "allow[ ] the court

6  to draw the reasonable inference that the defendant is liable for

7  the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 663, 129 S. Ct. at

8  1949. "The plausibility standard is not akin to a 'probability

9  requirement,' but it asks for more than a sheer possibility that

10  a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S.

11  at 557).[8] A complaint may fail to show a right to relief either by

12  lacking a cognizable legal theory or by lacking sufficient facts

13  alleged under a cognizable legal theory. <u>Balistreri v. Pacifica</u>

14  <u>Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

15  **B. Analysis**

16  _____

17  [8] <u>Twombly</u> imposed an apparently-new "plausibility" gloss on
   the previously well-known Rule 8(a) standard, and retired the
18  long-established "no set of facts" standard of <u>Conley v. Gibson</u>,
   355 U.S. 41 (1957), although it did not overrule that case
19  outright. <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th
   Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright
20  overruling <u>Conley</u> ...," although it was retiring the "no set of
   facts" language from <u>Conley</u>). The Ninth Circuit has acknowledged
21  the difficulty of applying the resulting standard, given the
   "perplexing" mix of standards the Supreme Court has applied in
22  recent cases. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th
   Cir. 2011) (comparing the Court's application of the "original,
23  more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>,
   534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per
24  curiam), with the seemingly "higher pleading standard" in <u>Dura</u>
   <u>Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and
25  <u>Iqbal</u>), <u>rehearing en banc denied</u>, 659 F.3d 850 (October 5, 2011).
   See also <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011)
26  (applying the "no set of facts" standard to a Section 1983 case).

**1. Have Plaintiffs pleaded sufficient facts to proceed against Metals USA under a theory of successor liability?**

Metals USA moves to dismiss the FAC under Rule 12(b)(6), arguing that it cannot be held liable under a theory of successor liability.

When the court sits in diversity, it must apply the substantive law of the forum in which it is located. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). California substantive law governs the issue of successor liability for the purposes of this motion, and both plaintiffs and Metals USA have briefed the issue with reference to California law.

**a. What is the legal standard for successor liability?**

Under California's rule of successor liability, a corporation purchasing the principal assets of another corporation does not assume the predecessor corporation's liabilities unless one of the following exceptions applies:

(1) there is an express or implied agreement of assumption;

(2) the transaction amounts to a consolidation or merger of the two corporations;

(3) the purchasing corporation is a mere continuation of the seller;

(4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts; or

(5) the seller, had it remained a going concern, would have been liable under the doctrine of strict products liability.

18

1    Ray v. Alad Corp., 19 Cal.3d 22, 28, 34 (1977).[9]

2        The question of whether to impose successor liability involves

3    "broad equitable considerations." Rosales v. Thermex-Thermatron,

4    Inc., 67 Cal.App.4th 187, 196 (1998) (internal citations omitted).

5    The question whether it is fair to impose successor liability is

6    exclusively for the trial court. Id.

7        Plaintiffs argue for the imposition of successor liability

8    under the fourth Ray exception: that Dura-Loc fraudulently conveyed

9    assets to Metals USA in order to avoid liability for the failing

10   Tiles.

11       At this juncture, one point of law must be clarified. The line

12   of cases culminating in Ray, 19 Cal.3d at 22, and its progeny

13   articulate an equitable, common-law theory for establishing

14   successor liability. This body of law is distinct from California's

15   codification of the Uniform Fraudulent Transfer Act ("UFTA") at

16   California Civil Code sections 3439-3439.12. While both address

17   fraudulent transfers of assets, the Ray doctrine merely allows

18   courts to determine successor liability based on such a transfer.

19   The UFTA is far more comprehensive, providing as it does an

20   independent cause of action for fraudulent transfer, and remedies

21   such as the attachment of assets or injunctive relief against

22   ───────────

23       [9] While Ray is a products liability case, California courts
     apply the same rule in assessing successor liability in non-tort

24   cases. See, e.g., McClellan v. Northridge Park Townhome Owners
     Ass'n, Inc., 89 Cal.App.4th 746 (2001) (applying Ray to hold that,

25   where plaintiff contractor had obtained judgment against homeowners
     association for amount due under contract, successor homeowners
     association was merely a continuation of predecessor, and could

26   therefore be added as judgment debtor).

1   disposition of assets. Cal. Civ. Code § 3439.07(a).

2        As such, both parties' attempts to import UFTA principles into

3   their arguments are unavailing. Plaintiffs argue in their

4   opposition that they have pleaded facts satisfying the standards

5   for finding a fraudulent transfer under Cal. Civ. Code section

6   3439.04. (Plaintiff's Opp., Docket no. 23, at 7-13.) Metals USA

7   disputes this claim, but then goes on to argue that, if UFTA

8   principles are to apply in determining successor liability, so too

9   must the UFTA's statute of limitations, which would bar plaintiffs'

10  claims against them. (Metals USA Reply, Docket no. 25, at 6-7.)

11  Metals USA also argues that the UFTA's protections for good faith

12  transferees who take assets for value, Cal. Civ. Code § 3439.08,

13  exempt it from liability. (Metals USA Reply, Docket no. 25, at 6.)

14       Neither side is correct. Research has failed to unearth a

15  single federal or California case that applies section 3439.04 to

16  assess whether a fraudulent transfer occurred under Ray. See also

17  Kim v. Interfirst Capital Corp., No. G030719, 2003 WL 21214268 at

18  *3 (Cal.Ct.App. May 27, 2003) (finding no authority for applying

19  section 3439.04 to the question of successor liability due to

20  fraudulent transfer).[10] The court therefore also declines to import

21  the UFTA's statute of limitations and its protections for good

22  faith transferees into the successor liability inquiry.

23  _____

24       [10] While the court is not bound by unpublished state
    decisions, it may consider them in its decision-making. See, e.g.,
25  Roe ex rel Callahan v. Gustine Unified School Dist. 678 F.Supp.2d
    1008, 1042-43 (E.D.Cal. 2009) (Wanger, J.) (citing two unpublished
26  California appellate decisions – and several published opinions –
    in support of the court's interpretation of a California statute).

The court will turn to common-law principles in deciding whether plaintiffs have properly pleaded a case for successor liability.

**b. Can Metals USA be held liable under plaintiffs' theory of successor liability**?

The fact pattern presented in Plaintiffs' complaint is admittedly unique. In nearly every case finding successor liability due to a fraudulent transfer, the successor entity is tied to the fraud in some way. See, e.g., Bradford v. Winter, No. B216235, 2010 WL 3260011 (Cal.Ct.App. 2010) (predecessor and successor entities had common shareholders); Schultz v. Bradshaw, No. D057471, 2011 WL 1991662 (Cal.Ct.App. 2011) (predecessor and successor entities had same principal shareholder); Phillips, Spallas & Angstadt, LLP v. Fotouhi, 197 Cal.App.4th 1132 (2011) (predecessor and successor law firms both employed the attorney who perpetrated fraud).

By contrast, plaintiffs do not allege that Metals USA participated in the alleged fraudulent transfer. Instead, plaintiffs allege:

1.   "Plaintiffs are informed and believe...that in or around 2005, Dura-Loc became acutely aware that the inherent defect was beginning to manifest on the Tiles as Dura-Loc received an unusually large amount of warranty claims to repair or replace its consumers' Tiles and received numerous complaints regarding the separation of the granules from the Tiles and the discolored appearance of the Tiles." (FAC ¶ 39.)

2.    "Plaintiffs are informed and believe...that in 2005 Dura-Loc's sales for the Tiles were approximately $11.3 million." (FAC ¶ 40.)

3.    "Despite the fact that Dura-Loc had more than doubled its amount of sales from 1997 to 2005, in or around May 2006, Dura-Loc sold all of its assets to Defendant Metals USA for $9.4 million - nearly two million dollars ($2,000,000.00) less than its total sales for the previous fiscal year." (FAC ¶ 41.)

4.    "Under the purchase agreement, Plaintiffs are informed and believe...that Defendant Metals USA did not expressly assume any of the warranty obligations or liabilities of Dura-Loc." (FAC ¶ 41.)

5.    "Plaintiffs are informed and believe...that Dura-Loc and Defendant Metals USA entered into this purchase transaction with the intent to escape Dura-Loc's liability and warranty obligations for the Tiles which is evidenced by, among others: (i) the substantial number of warranty claims and owner complaints that were received by Dura-Loc with respect to the Tiles in the years preceding the purchase by Metals USA; (ii) that Dura-Loc sold all of its assets to Metals USA for nearly two million dollars ($2,000,000.00) less than its total sales for the previous fiscal year; and (iii) that Defendant Metals USA reported in its FORM 10-Q for the quarterly period ended August 15, 2011, that its

22

                Building    Products    group    'recorded    a    gain    of
approximately  $0.7  [$700,000.00]  resulting  from  a
settlement with the previous owners of the Dura-Loc...to
cover pre-acquisition warranty claims.'" (FAC ¶ 43.)

6.    " After its sale to Defendant Metals USA[], Dura-Loc
ceased its manufacturing, marketing, and selling of the
Tiles, and changed its name to 604471 Ontario, Inc."
(FAC ¶ 44.)

In short, plaintiffs allege that as warranty claims mounted, Dura-Loc sought to escape liability by selling its assets to Metals USA for a below-market price and ceasing operations. Later, Dura-Loc paid Metals USA $700,000.00 to cover pre-acquisition warranty claims.

One California case presents facts analogous to the present matter. In <u>Kim</u>, 2003 WL 21214268 at *1, the plaintiffs alleged that they were sold "unsuitable stock" by Gallagher & Co., a brokerage firm. Interfirst Capital Corp. later purchased Gallagher's assets. The plaintiffs eventually sued Interfirst on a theory of successor liability. Their complaint alleged significant fraud by Gallagher, but none by Interfirst. Instead, plaintiffs alleged that Interfirst purchased Gallagher for significantly below market value. The trial court allowed the matter to proceed on the issue of "whether the purchase price in any way evidenced a fraudulent intent on the part of the purchaser." <u>Id.</u> After a bench trial, the court found that Interfirst's purchase was for adequate consideration, relieving it of successor liability.

1    Given _Kim_, it appears that California law will support a

2 theory of successor liability due to fraudulent transfer, even

3 where allegations of fraud are based solely on inadequate

4 consideration.

5    Determinations of successor liability are highly fact-

6 specific, and it would be inappropriate for the court to rule on

7 the substantive merits of plaintiffs' case for successor liability

8 at the pleadings stage. "Each successor liability 'case must be

9 determined on its own facts' including looking at the 'totality of

10 the unusual circumstances.'" See _CenterPoint Energy, Inc. v._

11 _Superior Court_, 157 Cal.App.4th 1101, 1115 (quoting _Rego v. ARC_

12 _Water Treatment Co. of Pa._, 181 F.3d 396, 403 (3d Cir. 1999)).

13 Nevertheless, plaintiffs must still meet the pleading standards set

14 forth in the Federal Rules of Civil Procedure. And it is here that

15 plaintiffs come up short.

16              **c. Have plaintiffs pleaded adequate facts to**

17                 **support their theory of successor liability?**

18    Metals USA argues that plaintiffs have failed to plead its

19 involvement in the alleged fraudulent transfer with the

20 particularity required under Rule 9(b), which provides: "In

21 alleging fraud or mistake, a party must state with particularity

22 the circumstances constituting fraud or mistake. Malice, intent,

23 knowledge, and other conditions of a person's mind may be alleged

24 generally." "Particularity" means that the allegations specify

25 facts such as "times, dates, places, benefits received, and other

26 details of the alleged fraudulent activity." _Neubronner v. Milken_,

6 F.3d 666, 672 (9th Cir. 1993).

Plaintiffs counter that, as they have alleged no fraud on Metals USA's part, they need not plead its fraudulent conduct with particularity.

The court is inclined to agree with plaintiffs. As stated in Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1297 (3d ed. 2012):

> [T]he pleading of the circumstances of the alleged fraud with a certain amount of precision...serves the federal rule's purpose by apprising [the defendant] of the nature of the claim and the acts or statements or failures...constituting the fraud being charged against [the defendant]....
> [T]he reasons for the particularity rule are not present when the fraud alleged is that of someone who is not a party to the action, and it has been held that in such a case the circumstances of the fraud or mistake need not be pleaded by the plaintiff with any special degree of particularity.

Two recent unpublished opinions of district courts in the Ninth Circuit echo this view.

In <u>Pacific Rollforming, LLC v. Trakloc Int'l, LLC</u>, No. CV 07-1897, 2008 WL 4183916 (S.D.Cal. Sept. 8, 2008) (Lorenz, J.), plaintiff sought to assert liability over successor entities for fraud allegedly perpetrated by a predecessor-in-interest. The successors moved to dismiss for plaintiff's failure to allege their liability with particularity under Rule 9(b). The court refused to so, finding that Rule 8(a)(2) governed pleading of the successor-in-interest allegations.

In <u>Monaco v. Bear Stearns Companies, Inc.</u>, No. CV 09-05438, 2011 WL 4059801 (C.D.Cal. Sept. 12, 2011) (Otero, J.), plaintiffs

1   claimed that defendant JPMorgan Chase & Co. ("JPMorgan") was liable

2   under a successor theory for fraudulent omissions by its

3   predecessor-in-interest. JPMorgan moved to dismiss, arguing that

4   plaintiffs had failed to plead sufficient facts to support a theory

5   of successor liability. The court quoted Pacific Rollforming, 2008

6   WL 4183916 at *3, approvingly for the proposition that "the liberal

7   requirements of Rule 8(a)(2) apply to...successor-in-interest

8   allegations concerning [d]efendants," and denied JPMorgan's motion.

9   Monaco, 2011 WL 4059801 at *19.

10       But there remains the question of whether plaintiffs have met

11  Iqbal's pleading requirements with respect to Dura-Loc's alleged

12  fraud. The court finds that it did not.

13       Plaintiffs plead several critical facts on information and

14  belief without providing any factual basis for their belief: first,

15  that Dura-Loc because aware of its mounting liabilities around 2005

16  (FAC ¶ 39); second, that Dura-Loc's sales for the Tiles were

17  approximately $11.3 million (FAC ¶ 40); and third, that Defendant

18  Metals USA did not expressly assume any of the warranty obligations

19  or liabilities of Dura-Loc (FAC ¶ 41). Plaintiffs have failed to

20  state any factual basis for their belief in these allegations.

21       Under Rule 9(b), plaintiffs are permitted to plead allegations

22  of fraud on information and belief, but must still state the

23  factual basis for their belief. Neubronner, 6 F.3d at 672. While

24  the court, per Wright & Miller, recognizes that Dura-Loc is not a

25  party to this action and therefore need not be "appris[ed] of the

26  nature of the claim and [its] acts or statements or failures,"

1  <u>Federal Practice and Procedure</u> at § 1297, the absence of any facts
2  supporting plaintiffs' beliefs means that their allegations are
3  closer to the realm of "possibility" than the realm of
4  "probability." <u>See</u> <u>Iqbal</u>, 556 U.S. at 663. Simply put, the court
5  has no way of knowing whether the allegations in question are
6  derived from some source, no matter how remote, or conceived of to
7  support plaintiffs' claims. As such, the complaint lacks sufficient
8  well-pleaded facts to allege a cognizable legal theory for
9  successor liability. <u>Balistreri</u>, 901 F.2d at 699.

10      The court accordingly finds that plaintiffs have failed to
11  state a claim for successor liability against defendant Metals USA,
12  and will grant Metals USA's motion to dismiss.

13      That said, this appears to be an instance in which discovery
14  into the relevant facts is merited. Under Rule 26(b)(1), "For good
15  cause, the court may order discovery of any matter relevant to the
16  subject matter involved in the action...." Further, under Rule
17  26(d)(1), the court has the power to authorize such discovery
18  before the mandatory Rule 26(f) conference. Good cause lies in this
19  instance because plaintiffs have pleaded facts – an apparently-low
20  purchase price, Dura-Loc's $700,000 payment to settle warranty
21  claims – that raise concerns about fraudulent transfer, but all of
22  the relevant evidence is in defendant Metals USA's possession.

23      As stated in <u>Jones v. AIG Risk Management, Inc.</u> 726 F.Supp.2d
24  1049, 1055-56 (N.D.Cal. 2010) (Chen, J.) (cited with approval for
25  this point in Arthur R. Miller, <u>From Conley to Twombly to Iqbal:</u>
26  <u>A Double Play on the Federal Rules of Civil Procedure</u>, 60 Duke L.J.

1, 107 n.411 (2010)):

> The Court has the ability to permit such discovery even in the face of dismissal for failure to satisfy Iqbal and Twombly where, as here, relevant evidence is solely within the province of Defendants, leaving open the possibility of further amendment. Cf. Santiago v. Walls, 599 F.3d 749, 758-59 (7th Cir.2010) (improper to discuss complaint where lack of specificity is due to facts plaintiff cannot know for certain without discovery); Arocho v. Nafziger, 367 Fed.Appx. 942, 954-55 (10th Cir.2010) (where facts known only by defendants, plaintiff should be afforded opportunity to amend pleadings); Morgan v. Hubert, 335 Fed.Appx. 466, 472 (5th Cir.2009) (plaintiff cannot be requested to plead facts peculiarly within the knowledge of defendants); Tompkins v. LaSalle Bank Corp., 2009 WL 4349532 (N.D.Ill. Nov. 24, 2009) (plaintiff should be afforded opportunity to conduct discovery into liability of parent corporation before summary judgment).

Therefore, the court will allow plaintiffs to conduct limited, reasonable, tailored discovery into the course of dealings between Metals USA (and any subsidiary), on the one hand, and Dura-Loc and 604471 Ontario, on the other, in support of its allegations of successor liability. Plaintiffs' discovery requests may be directed solely to Metals USA.

**IV. CONCLUSION**

The court hereby orders as follows:

[1] As to Defendant R. Allan Reid's motion to dismiss plaintiffs' First Amended Complaint, plaintiffs and defendant Reid SHALL PROVIDE further briefing on the following questions:

[a] Can the court exercise personal jurisdiction over an individual shareholder and officer of a corporation under an alter ego theory if the

1          corporation itself is not a party to the action?

2          [b] If the corporation is a necessary party, may

3          Dura-Loc's actions be imputed to 604471 Ontario for

4          purposes of the exercise of personal jurisdiction?

5     Plaintiffs' brief is due within fourteen (14) days of

6     the effective date of this order. Defendant Reid's

7     brief, if any, is due within twenty-eight (28) days of

8     the effective date of this order. The parties' briefs

9     are to be no longer than ten (10) pages each.

10    [2] Defendant Metals USA, Inc.'s motion to dismiss

11    plaintiffs' First Amended Complaint for failure to state

12    a claim is GRANTED without prejudice.

13    [3] Plaintiffs are granted leave to conduct discovery

14    under the terms outlined above, to be supervised by the

15    Magistrate Judge. Plaintiffs must file any amended

16    complaint no later than ninety (90) days after entry of

17    this order, but only if discovery provides a basis for

18    well-pleaded allegations of successor liability against

19    Metals USA.

20  IT IS SO ORDERED.

21  DATED:  October 12, 2012.

22

23

24                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
25                              UNITED STATES DISTRICT COURT

26