1

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

JAMES WILSON, an individual,
10  and JACK WHITE and RITA
WHITE, a married couple,
11  on behalf of themselves
and all others similarly
12  situated,

13                              NO. CIV. S-12-0568 LKK/GGH

          Plaintiffs,
14

     v.
15                                  O R D E R

METALS USA, INC., a Delaware
16  Corporation; R. ALLAN REID,
an individual and DOES 1-100,
17  inclusive,

18

          Defendants.
19  _____/

20       Defendant R. Allen Reid's motion to dismiss plaintiffs' First

21  Amended Complaint came on for hearing on October 1, 2012. Reid

22  moved to dismiss on the grounds that the court lacks personal

23  jurisdiction over him in this matter. In considering the motion,

24  the court determined that it required supplemental briefing by

25  plaintiffs and Reid on the following questions:

26       (1) Can the court exercise personal jurisdiction over an

                              1

1   individual shareholder and officer of a corporation under an
2   alter ego theory if the corporation itself is not a party to
3   the action?

4   (2) If the corporation is a necessary party, may Dura-Loc
5   Roofing Systems Limited's actions be imputed to 604471
6   Ontario, Inc. for purposes of the exercise of personal
7   jurisdiction?

8   Having received and reviewed the parties' briefs (Docket nos. 32,
9   33), the court will *sua sponte* dismiss plaintiffs' First Amended
10  Complaint without prejudice, for the reasons set forth below.

11  **I. FACTS**

12  The relevant facts are set forth in full in the court's order
13  of October 12, 2012 (Docket no. 31). See <u>Wilson v. Metals USA,</u>
14  <u>Inc.</u>, No. 12-0568, 2012 WL 4888477 (E.D.Cal. Oct 12, 2012).

15  Briefly, plaintiffs' First Amended Complaint ("FAC", Docket
16  no. 11) alleges as follows. Dura-Loc Roofing Systems Limited, a
17  Canadian corporation, advertised, marketed, sold, and warranted
18  defective roofing tiles ("Tiles") to consumers in California.
19  Although the corporation was previously notified that ultraviolet
20  light could penetrate a material used on the Tiles' surface, Dura-
21  Loc's advertising represented that the Tiles were UV-resistant and
22  would retain their appearance for 25 years after installation.

23  Plaintiffs, who are residents of the Eastern District of
24  California, purchased and installed the Tiles on their houses.
25  Within a few years, these Tiles deteriorated and grew discolored.
26  In 2006, Dura-Loc sold its assets to Metals USA, Inc., a

Delaware corporation, and a former defendant in this action. After the asset sale, Dura-Loc ceased manufacturing, marketing, and selling the Tiles, and changed its name to 604471 Ontario, Inc.

Defendant Reid was the founder, owner, president, and majority shareholder of Dura-Loc, and plays the same roles for 604471 Ontario. He was aware at all relevant times that the Tiles were defective.

Plaintiffs have sued Reid, alleging five causes of action: (1) fraudulent concealment/non-disclosure, (2) breach of express warranties, (3) breach of written warranties under the federal Magnuson-Moss Warranty Act, (4) violations of California's Consumer Legal Remedies Act, and (5) violations of Cal. Bus. & Prof. Code § 17200. They seek to hold Reid liable for the defective Tiles under an alter ego theory. Neither Dura-Loc nor 604471 Ontario is named as a defendant in the FAC.

On or about April 2012, 604471 Ontario filed for bankruptcy in the province of Ontario.[1]

**II. ANALYSIS**

**A. Choice of law**

In addressing whether plaintiffs may exercise personal jurisdiction over Reid under an alter ego theory, the first step is to determine whether to apply California or Ontario law to the

_____

[1]  The court is unaware of the status of the bankruptcy proceedings, and of the legal consequences of an Ontario bankruptcy filing on this action. Accordingly, the fact of 604471 Ontario's bankruptcy plays little part in the decision herein.

question of alter ego liability.[2,3]

A district court sitting in diversity in California must follow California's choice of law rules. See Arno v. Club Med, Inc., 22 F.3d 1464, 1467 (9th Cir.1994); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

California courts apply a three-step "governmental interest" test to choice-of-law questions. Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000). First, the court examines the substantive law of each jurisdiction to determine whether the law in question differs in any relevant respect between the jurisdictions. Id. If the court does find such a difference, it next determines whether there is a "true conflict" between the laws. A "true conflict" is presented when "each of the relevant jurisdictions has an interest in having its law applied." Id. If there is a true conflict, then in the third step, the court focuses on the "comparative impairment" of the interested jurisdictions. The court identifies the law of the state "whose interest would be the more impaired if its law were not applied," and applies it. Id. (internal quotation

---

[2] Reid's declaration provides that "Dura-Loc was incorporated in the Province of Ontario on December 7, 1984," (Docket no. 22-1 ¶ 15) and the parties have briefed this issue with reference to Ontario law, so the court will conduct this analysis under Ontario law, rather Canada's federal law.

[3] The parties disagree on whether there are substantial differences between California and Ontario law on this point. Reid maintains that there are no significant differences, and urges the court to adopt California law. Plaintiffs insist that significant differences exist, and urge the court to adopt Ontario law.

1   marks and citations omitted).

2       Here, the full three-step analysis is unnecessary because

3   there do not appear to be meaningful differences between California

4   and Ontario law regarding the doctrine of alter ego liability.

5   Before the corporate veil may be pierced, California requires "(1)

6   that there be such unity of interest and ownership that the

7   separate personalities of the corporation and the individual no

8   longer exist and (2) that, if the acts are treated as those of the

9   corporation alone, an inequitable result will follow." Automotriz

10  Del Golfo De California S. A. De C. V. v. Resnick, 47 Cal.2d 792,

11  796 (1957). A recent decision of the Court of Appeal for Ontario,

12  the province's highest court, sets forth the following test for

13  alter ego liability under Ontario law:

14      [T]he courts will disregard the separate legal
    personality of a corporate entity where it is completely
15  dominated and controlled and being used as a shield for
    fraudulent or improper conduct. The first element,
16  "complete control", requires more than ownership. It
    must be shown that there is complete domination and that
17  the subsidiary company does not, in fact, function
    independently....
18
    The second element relates to the nature of the conduct:
19  is there "conduct akin to fraud that would otherwise
    unjustly deprive claimants of their rights"?
20

21  Parkland Plumbing & Heating Ltd. v. Minaki Lodge Resort 2002 Inc.

22  (2009) 305 D.L.R.4th 577 (Ont. C.A.) (quoting Transamerica Life

23  Insurance Co. of Canada v. Canada Life Assurance Co. (1996) 28

24  O.R.3d 423, 433-34 (Ont. Gen. Div.), aff'd, (Ont. C.A.)). The two

25  tests are remarkably similar: the first prong requires the court

26  to find that essentially no difference exists between the

1  individual and the corporation (thus, "alter ego"), and the second
2  prong requires the court to find that maintaining the corporate
3  veil would sanction an injustice, such as fraud.[4] As the test for
4  alter ego liability is essentially the same in both jurisdictions,
5  the court will proceed to apply California law.

6  **B. Continuity of existence**

7       The court ordered the parties to brief the question of whether
8  Dura-Loc's actions could be imputed to 604471 Ontario for the
9  purposes of the court's exercise of personal jurisdiction. The
10 cases cited by plaintiffs (two applying California law, one
11 applying New York law) for the proposition that 604471 Ontario
12 stands in Dura-Loc's shoes are unhelpful, for as Reid notes, under
13 California law, "the continuing legal existence of a corporation
14 depends on the law of the state of incorporation." CM Record Corp.
15 v. MCA Records, Inc., 168 Cal.App.3d 965, 967 (1985) (citing 6
16 Witkin, Summary of Cal. Law (8th ed. 1974) § 193, pp. 4468-4469);
17 see also Robinson v. SSW, Inc., 209 Cal.App.4th 588, 601 (2012).

18      But after correctly identifying that Ontario law should
19 determine whether Dura-Loc's actions may be imputed to 604471
20 Ontario, Reid fails to brief the applicable law, instead writing
21 only that "Plaintiffs' failure to cite any applicable Ontario law
22 suggests [the acts of Dura-Loc] should not [be imputed to 604471

23 _____

24      [4] Even if the court were to find meaningful differences and
a true conflict between the California and Ontario law on this
point, there is little doubt that California law would apply. Under
25 the "comparative impairment" analysis, California's interest in
preventing consumer fraud outweighs Ontario's interest in
26 protecting the sanctity of the corporate veil.

1  Ontario].'" (Reid's Supplemental Brief, Docket no. 33, at 5.)

2  Based on the court's research, it appears that a named Ontario

3  corporation (*e.g.*, "Dura-Loc Roofing Systems Limited") may become

4  a numbered Ontario corporation (*e.g.*, "604471 Ontario, Inc.") by

5  filing appropriate Articles of Amendment with the government of the

6  Province of Ontario, which assigns the corporation the next-

7  available corporation number. There is otherwise continuity of

8  existence between the two entities, and the newly-named entity

9  bears the same legal liability that it would have under its prior

10  name.

11  The court therefore finds, for the purposes of this motion,

12  that Dura-Loc's actions can be imputed to 604471 Ontario.

13  Accordingly, the remainder of this order will refer to the entity

14  in question as "604471 Ontario" (except when discussing events that

15  took place when it was named "Dura-Loc").

16  **C. 604471 Ontario as a necessary party**

17  Plaintiffs argue that the court can exercise personal

18  jurisdiction over a corporation's principal under an alter ego

19  theory if the corporation itself is not a party to the action. But

20  the cases they cite in support of this proposition are entirely

21  inapt.[5] Moreover, the proposition necessarily fails under Fed. R.

22  

23  [5] For example, in <u>CEM Corp. v. Grillo</u>, no. 5:97-CV-614-BR2, 1998 U.S. Dist. LEXIS 8082 (E.D.N.C. April 22, 1998), the court had previously entered judgment against the corporation of which the

24  defendant was allegedly an alter ego. <u>Wells Fargo Bank, N.A.. v. Konover</u>, no. 3:05-CV-1924, 2009 WL 585434, 2009 U.S. Dist. LEXIS

25  19105 (D.Conn. Mar. 4, 2009) concerns compliance with a subpoena duces tecum by a non-party corporation from whom discovery was

26  sought in support of alter ego allegations. In <u>Stewart v. Ahern</u>,

Civ. P. 19 ("Required Joinder of Parties").

**1. Standard for required joinder of parties under Rule 19**

Under Fed. R. Civ. P. 19,[6] required parties to an action must be joined, and if they cannot be, the court must determine whether the action should nevertheless proceed in their absence. "A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join." Republic of Philippines v. Pimentel, 553 U.S. 851, 861 (2008). The determination is case-specific and based on equitable considerations. Id. at 862-863.

The court engages in a three-step inquiry under Rule 19. EEOC v. Peabody Western Coal Co., 610 F.3d 1070, 1078 (9th Cir. 2010) ("Peabody II").

First, it must determine whether an absent nonparty is "necessary," *i.e.*, a person "required to be joined if feasible," under Rule 19(a).[7] Id. Rule 19(a)(1) requires a party's inclusion if:

---

32 F.2d 864 (9th Cir. 1929), the plaintiff obtained a judgment against the corporation before proceeding individually against the shareholder in equity. And so on.

[6] Hereinafter, the term "Rule" refers to the applicable Federal Rule of Civil Procedure.

[7] Cases applying Rule 19 have generally used the term "necessary" to describe an absent party meeting the requirements of Rule 19(a)(1), and "indispensable" to describe a necessary party for whom joinder is not feasible, thereby requiring dismissal under Rule 19(b). The Advisory Committee's Notes on the 2007 Amendment indicate a desire to discard the term "indispensable," but because this term is ubiquitous in the earlier case law applying Rule 19, some usage is inevitable.

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (I) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Subdivision (a)(1)(A)'s "complete relief" clause concerns only "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." Eldredge v. Carpenters 46 N. Cal. Counties Jt. Apprenticeship and Training Comm., 662 F.2d 534, 537 (9th Cir. 1981) (applying previous version of Rule 19).[8] Subdivision (a)(1)(B) concerns "prejudice, either to the absent persons or to those already parties." Id.

If the nonparty meets the requirements of Rule 19(a), the second step is for the court to determine whether it is feasible to order that the nonparty be joined. Peabody II, 610 F.3d at 1078.

Finally, if joinder is not feasible, the court must determine whether the case can proceed without the nonparty or whether the action must be dismissed because the party is "indispensable." Id.

---

    [8] Rule 19 received significant amendments in 1966, but was little changed by subsequent amendments in 1987 and 2007. "[T]he substance and operation of the Rule both pre- and post-2007 are unchanged." Republic of Philippines, 553 U.S. at 856. "The [1987] amendments are technical. No substantive change is intended." Advisory Committee's Notes on Fed. R. Civ. P. 19 (1987).

Under Rule 19(b), four factors are relevant to the latter inquiry:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

These factors are nonexclusive of other considerations, and no factor taken alone is dispositive. Republic of Philippines, 553 U.S. at 862. Instead, in the context of a particular case, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. ENC Corp., 464 F.3d 885, 891 (9th Cir. 2006). A nonparty in whose absence an action must be dismissed is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 58 U.S. 130, 139, 17 How. 130, 15 L.Ed. 158 (1855).

1        **2. Person "required to be joined if feasible"**

2        The Rule 19 analysis begins with a determination of whether

3    604471 Ontario qualifies as a person "required to be joined if

4    feasible" under Rule 19(a)(1).

5        As will be seen, in 604471 Ontario's absence, "the court

6    cannot accord complete relief among existing parties." Fed. R. Civ.

7    P. 19(a)(1)(A). Under California law, the trial court, rather than

8    the jury, determines whether the corporate veil should be pierced.

9    <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 210 Cal.App.2d 825,

10   836-837 (1962). But "the determination of whether a corporation is

11   an alter ego is ordinarily a question of fact." <u>Alexander v. Abbey</u>

12   <u>of the Chimes</u>, 104 Cal.App.3d 39, 46 (1980). Here, in order to

13   "afford complete relief" to plaintiffs, the court will have to

14   disregard the corporate veil between 604471 Ontario and Reid; but

15   it can only do so if it finds that the factual requirements for an

16   alter ego theory have been met. The court cannot decide at the

17   pleadings stage — as plaintiffs desire — that Reid is in fact

18   604471 Ontario's alter ego, and so 604471 Ontario need not be

19   joined as a party. Achieving complete relief for plaintiffs by

20   holding Reid liable for 604471 Ontario's acts requires the joinder

21   of the corporation.

22       This analysis is reinforced by the significant risk of

23   prejudice to 604471 Ontario under the criteria outlined in Rule 19.

24   The corporation has an obvious "interest relating to the subject

25   of the action" (Fed R. Civ. P. 19(a)(1)(B)): namely, that it may

26   be found liable for defrauding plaintiffs, and, if a class is

1    certified, many others. A party is required to be joined if its
2    absence "as a practical matter [would] impair or impede the
3    person's ability to protect [its] interest" in the action. Fed. R.
4    Civ. P. 19(a)(1)(B)(I). Unless joined in the action, 604471 Ontario
5    would have no ability to defend itself from allegations of
6    liability. Reid cannot adequately substitute for the corporation,
7    as he may ignore questions of liability and instead focus his
8    defense on showing that he is not the corporation's alter ego.

9         Finally, unless joined in this action, 604471 Ontario is
10   "subject to a significant risk of incurring double, multiple, or
11   otherwise inconsistent obligations because of [its] interest" in
12   the litigation. Fed. R. Civ. P. 19(a)(1)(B)(ii). Any determination
13   of the corporation's liability or non-liability might be *res*
14   *judicata* in future cases addressing the purported consumer fraud
15   or collaterally estop 604471 Ontario from arguing its non-liability
16   in other proceedings. For example, if the court were to refuse to
17   certify a class action herein but allowed the individual action to
18   proceed, and other affected plaintiffs sued 604471 Ontario (and not
19   Reid) in state or federal court in the U.S., this court's finding
20   as to liability might preclude a full airing of the issues in that
21   case. Moreover, as Reid points out, allowing plaintiffs to proceed
22   against Reid alone under an alter ego theory may yield
23   inconsistencies between the liability determination in this case
24   and any liability determination made by the Ontario bankruptcy
25   court. (Reid's Supplemental Brief, Docket no. 33, at 4.)

26        In short, 604471 Ontario appears to be a person "required to

1  be joined if feasible" under all three prongs of Rule 19(a)(1).

2  **3. Feasibility of joinder**

3  The second step requires an assessment of whether it is
4  feasible to join 604471 Ontario as a party. There are generally
5  three circumstances in which joinder is not feasible: when joinder
6  would destroy subject matter jurisdiction, when venue is improper,
7  and when the absentee is not subject to personal jurisdiction.
8  E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774, 779 (9th Cir.
9  2005) ("Peabody I").[9]

10  **a. Feasibility of joinder: subject matter jurisdiction**

11  Subject matter jurisdiction in this case is predicated on
12  diversity. (FAC 2.) Joinder of a nonparty under Rule 19 is not
13  feasible where it would destroy complete diversity of citizenship,
14  thus depriving the court of subject matter jurisdiction. 28 U.S.C.
15  § 1367(b). However, as plaintiffs are all citizens of California
16  and 604471 Ontario is an Ontario corporation, it appears that
17  joinder of the corporation would preserve complete diversity, and
18  not destroy subject matter jurisdiction.

19  **b. Feasability of joinder: venue**

20  Because subject matter jurisdiction in this suit rests
21  entirely on diversity, venue is determined under 28 U.S.C. § 1391.
22  Plaintiffs claim that venue is proper under subsection (b)(2),
23  which provides that "A civil action may be brought in...a judicial

24  _____

25  [9] The analysis that follows merely assesses the feasibility
   of joinder under Rule 19, and is not meant as a finding or a final
26  ruling on the merits as to subject matter jurisdiction, venue, or
   personal jurisdiction.

1   district in which a substantial part of the events or omissions
2   giving rise to the claim occurred..." (FAC 5.) Plaintiffs allege
3   that they purchased the Tiles in the Eastern District of California
4   and installed them on homes located in the District. Therefore, it
5   appears that venue is proper.

6       When considering the feasibility of joining an additional
7   defendant, the relevant inquiry is whether joinder would render the
8   Eastern District of California an improper venue under 28 U.S.C.
9   § 1391(b). As Dura-Loc is alleged to have advertised, marketed,
10  sold, and warranted the defective tiles in California from 1992 to
11  2006 (FAC 2, 8), venue in this district should continue to be
12  proper even if 604471 Ontario is joined as a defendant. Moreover,
13  28 U.S.C. § 1391(c)(3) provides that, "For all venue purposes...a
14  defendant not resident in the United States may be sued in any
15  judicial district, and the joinder of such a defendant shall be
16  disregarded in determining where the action may be brought with
17  respect to other defendants." As 604471 Ontario is alleged to be
18  a resident of Canada, it may properly be joined as a defendant and
19  this action may continue to be maintained in this district.

20      *c. Feasibility of joinder: personal jurisdiction*

21      On the record before it, the court is unable to determine
22  whether it may properly exercise personal jurisdiction over 604471
23  Ontario, and therefore, whether joinder is feasible.

24      The analysis begins with determining if the party is subject
25  to service under Rule 4. "If the court cannot obtain personal
26  jurisdiction through one of these [Rule 4] methods of service of

1   process over an absentee who would be a proper Rule 19(a) party to
2   an action, joinder cannot be allowed." 7 Charles Alan Wright &
3   Arthur Miller, <u>Federal Practice and Procedure</u> § 1610 (3d ed. 2012).
4   Under Rule 4(h), a foreign corporation "not within any judicial
5   district of the United States" must be served "in any manner
6   prescribed by Rule 4(f) for serving an individual, except personal
7   delivery under (f)(2)(C)(I)." Rule 4(f) provides a number of
8   methods which plaintiffs could utilize for international service,
9   and under the catch-all provision in Rule 4(f)(3) ("by other means
10  not prohibited by international agreement, as the court orders"),
11  plaintiffs may even move the court for permission to use unorthodox
12  methods such as email. <u>See</u> <u>Rio Properties, Inc. v. Rio Int'l</u>
13  <u>Interlink</u>, 284 F.3d 1007, 1016 (9th Cir. 2002). It is left "to the
14  sound discretion of the district court the task of determining when
15  the particularities and necessities of a given case require
16  alternate service of process under Rule 4(f)(3)." <u>Id.</u>

17  According to Rule 4(k)(1)(A), "serving a summons or filing a
18  waiver of service establishes personal jurisdiction over a
19  defendant...who is subject to the jurisdiction of a court of
20  general jurisdiction in the state where the district court is
21  located." California's long-arm statute authorizes the court to
22  exercise personal jurisdiction on any basis consistent with the due
23  process clause of the United States Constitution. Cal. Code Civ.
24  Proc. § 410.10; <u>Rocke v. Canadian Auto Sport Club</u>, 660 F.2d 395,
25  398 (9th Cir. 1981).

26  Consistent with the due process clause, courts may exercise

15

personal jurisdiction over a defendant when the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). If the defendant is domiciled in the forum state, or if the defendant's activities there are "substantial" or "continuous and systematic," a federal court can exercise general personal jurisdiction as to any cause of action involving the defendant, even if unrelated to the defendant's activities within the state. <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437 (1952); <u>Data Disc, Inc. v. Systems Technology Assoc., Inc.</u>, 557 F.2d 1280, 1287 (9th Cir. 1977).

If a non-resident defendant's contacts with California are not sufficiently continuous or systematic to give rise to general personal jurisdiction, the defendant may still be subject to specific personal jurisdiction on claims arising out of defendant's contacts with the forum state. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477-78 (1985); <u>Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.</u>, 784 F.2d 1392, 1397 (9th Cir. 1986).

In their complaint, plaintiffs allege that the court may exercise specific personal jurisdiction over 604471 Ontario.[10] (FAC 2.)

The court employs a three-part test to determine whether the

_____

[10] There is no allegation that Dura-Loc's or 694471 Ontario's contacts with California are sufficient for an exercise of general personal jurisdiction over the corporation.

exercise of specific jurisdiction comports with constitutional principles of due process. <u>Gray & Co. v. Firstenberg Machinery Co.</u>, 913 F.2d 758 (9th Cir. 1990); <u>Haisten</u>, 784 F.2d at 1397; <u>Data Disc</u>, 557 F.2d at 1287. First, the defendant must "purposefully avail" itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws.[11] Second, the claim must arise out of the defendant's forum-related activities, and third, the exercise of jurisdiction must be reasonable. <u>Haisten</u>, 784 F.2d at 1397. The plaintiff bears the burden of satisfying the first two prongs; if it does so, the burden shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990); <u>Burger King</u>, 471 U.S. at 477-78.

It is here that the personal jurisdiction analysis must halt. Even assuming, *arguendo*, that plaintiffs have adequately pleaded facts sufficient to satisfy the first two prongs of the specific jurisdiction test, 604471 Ontario has had no opportunity to rebut plaintiffs by arguing the potential unreasonableness of the exercise of jurisdiction. While defendant Reid has filed a

---

[11] The Ninth Circuit views the Supreme Court's recent decision in <u>J. McIntyre Machinery, Ltd., v. Nicastro</u>, __ U.S. __, 131 S.Ct. 2780 (2011) (refusing to uphold personal jurisdiction over foreign manufacturer that delivered products generally to the U.S. without directly targeting the forum state through local distributors or activities) as consistent with the line of cases finding specific jurisdiction when there has been purposeful direction of products or activities to the forum state. <u>See Mavrix Photo, Inc. v. Brand Technologies, Inc.</u>, 647 F.3d 1218, 1227-1228 (9th Cir. 2011).

1   declaration in support of his motion to dismiss for lack of
2   personal jurisdiction (Docket no. 22-1), the facts set forth
3   therein primarily address the ability of this court to exercise
4   personal jurisdiction over him, rather than over 604471 Ontario.
5   In fact, the irrelevance of Reid's declaration to the present
6   inquiry is yet another illustration of why the absent corporation
7   is a necessary party to this litigation: Reid and 604471 Ontario
8   likely have different defense strategies, and will allege different
9   facts in support of those strategies.

10      **4. Indispensable party**

11      To sum, there is presently insufficient evidence in the record
12  to determine the feasibility of joining 604471 Ontario in this
13  action. But having determined that the corporation is a required
14  party, the court will proceed to determine "whether, in equity and
15  good conscience, the action should proceed among the existing
16  parties or should be dismissed" because 604471 Ontario is an
17  indispensable party. Fed. R. Civ. P. 19(b); Peabody II, 610 F.3d
18  at 1078. In so doing, the court will consider the factors set forth
19  in Rule 19(b), keeping in mind that these four factors are not
20  exclusive. Republic of Philippines, 553 U.S. at 862.

21      The first factor – "the extent to which a judgment rendered
22  in the person's absence might prejudice that person" (Fed. R. Civ.
23  P. 19(b)(1)) – clearly weighs in favor of dismissal. As discussed
24  above, 604471 Ontario faces a significant risk of prejudice if this
25  action continues in its absence, as a finding of liability could
26  preclude a full exploration of the issue in future lawsuits and

1   expose the corporation to multiple or inconsistent verdicts.

2       The second factor — "the extent to which any prejudice could
3   be lessened or avoided by protective provisions in the judgment,
4   shaping the relief, or other measures" (Fed. R. Civ. P. 19(b)(2))
5   — also weighs in favor of dismissal, because it is unclear what
6   measures would lessen potential prejudice. 7 Charles Alan Wright
7   & Arthur Miller, <u>Federal Practice and Procedure</u> § 1608 (3d ed.
8   2012) sets forth approaches taken by various courts as an
9   alternative to dismissal. These include awarding monetary damages
10  in lieu of injunctive or declaratory relief, entering a judgment
11  conditioned on the plaintiff taking certain actions, or requiring
12  that sufficient funds be set aside to pay other claimants. None of
13  these approaches is satisfactory in the present matter, as in these
14  cases, the prejudice to be avoided was evident to the respective
15  courts and could be avoided through appropriate crafting of
16  remedies. By contrast, the effect of a judgment herein on 604471
17  Ontario is completely unforeseeable, particularly absent
18  information about its bankruptcy case. Without knowing the effects
19  of potential class certification and/or monetary damages on 604471
20  Ontario, it is impossible to mitigate any prejudice that might flow
21  from these proceedings.

22      The third factor — "whether a judgment rendered in the
23  person's absence would be adequate" — also arguably weighs in favor
24  of dismissal. According to the U.S. Supreme Court, "adequate" in
25  this context means satisfying "the social interest in the efficient
26  administration of justice and the avoidance of multiple

1  litigation." <u>Republic of Philippines</u>, 553 U.S. at 870 (<u>quoting</u>

2  <u>Illinois Brick Co. v. Illinois</u>, 431 U.S. 720, 737-738 (1977)). This

3  factor calls for consideration of "the public interest in settling

4  the dispute as a whole." <u>Id.</u> Here, plaintiffs seek to bring a class

5  action on behalf of California consumers who purchased defective

6  tiles from Dura-Loc. (FAC 1.) If plaintiffs survive defendants'

7  motions to dismiss, the court will likely be called on to certify

8  a class. It will be virtually impossible to conduct the analysis

9  called for under Rule 23 unless 604471 Ontario is a party to this

10 action. To wit: if plaintiffs seek to certify the class under Rule

11 23(b)(1), the court will be called on to determine whether

12 prosecuting separate actions by individual class members would

13 create a risk of "adjudications with respect to individual class

14 members that...would be dispositive of" other class members's

15 interests, or "substantially impair or impede their ability to

16 protect their interests." It may be that one or more potential

17 class members has already filed a claim against 604471 Ontario with

18 the Ontario bankruptcy court, or sued the company in a U.S. court;

19 absent the corporation's joinder as a defendant, this information

20 likely would not be presented to the court.

21     Or if plaintiffs seek to certify the class under Rule

22 23(b)(3), the court will have to examine factors such as "the

23 extent and nature of any litigation concerning the controversy

24 already begun by...class members" and "the desirability or

25 undesirability of concentrating the litigation of the claims in the

26 [Eastern District of California.]" Again, it may be that this

1  litigation should be brought in the Ontario bankruptcy court, or
2  that individual lawsuits have already been brought against 604471
3  Ontario by other California consumers. Neither plaintiffs nor Reid
4  may bring information relevant to this determination to light.

5      Ultimately, then, joinder of 604471 Ontario is necessary to
6  satisfy "the social interest in the efficient administration of
7  justice and the avoidance of multiple litigation" herein. Republic
8  of Philippines, 553 U.S. at 870.

9      The fourth factor, which addresses "whether the plaintiff
10 would have an adequate remedy if the action were dismissed for non-
11 joinder," likely also weighs in favor of dismissal. If 604471
12 Ontario cannot be joined as a defendant, plaintiffs could perhaps
13 initiate a proceeding against 604471 Ontario in the Ontario
14 bankruptcy court, and simultaneously or subsequently seek redress
15 against Reid for his role in the alleged fraud in another Canada
16 court.

17     One additional factor deserves mention. The plaintiffs herein
18 "are by no means the first plaintiffs to use the alter ego doctrine
19 in an attempt to avoid joinder of an [indispensable] party."
20 Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 559 (1985)
21 (internal citations omitted). In Freeman, the Fifth Circuit
22 examined numerous cases in which plaintiffs sued parent
23 corporations and asserted an alter ego theory to avoid joining a
24 subsidiary as a defendant, and concluded that "[t]he tactic has met
25 with singularly small success." Id. Plaintiffs named 604471 Ontario
26 as a defendant in their initial complaint (Docket no. 1), but not

in their First Amended Complaint. In the event plaintiffs omitted 604471 Ontario because they concluded that this court could not exercise personal jurisdiction over the corporation, it would be inequitable to reward this tactic by allowing the action to proceed.

In sum, the court determines that if 604471 Ontario cannot be joined as party, in equity and good conscience, this action should be dismissed rather than continue with the existing parties.

**III. CONCLUSION**

604471 Ontario is a person required to be joined in this action. Peabody II, 610 F.3d at 1078. If joinder if feasible, then under Rule 19(a)(2), the court "must order that [such a] person be made a party" to the action. If joinder is not feasible, the court must dismiss the action if doing so is preferable to continuing the action with the existing parties.

Because the record does not permit a determination of whether joinder is feasible, it is unclear whether the court should order joinder of 604471 Ontario or instead dismiss plaintiffs' First Amended Complaint.[12]

In its earlier order, (Docket no. 31), the court dismissed the First Amended Complaint as to defendant Metals USA, Inc., while granting plaintiffs leave to conduct limited discovery into the course of dealings between Metals USA and Dura-Loc/604471 Ontario.

---

[12] Any such dismissal would be without prejudice, as it does not go to the merits of the lawsuit. Dredge Corp. v. Penny, 338 F.2d 456, 464 (9th Cir. 1964).

1   The court also ordered plaintiffs to file an amended complaint

2   within 90 days if discovery provided a basis for well-pleaded

3   allegations of successor liability against Metals USA.

4       In light of the need for 604471 Ontario to be a party before

5   the court may adjudicate Reid's alter ego liability, and the

6   uncertainty over whether the court may exercise personal

7   jurisdiction over 604471 Ontario, it appears that the most prudent

8   course of action is to dismiss the FAC with respect to Reid and

9   require that, if plaintiffs wish to maintain this action against

10  Reid, that they name both him and 604471 Ontario as defendants in

11  an amended complaint. The deadline for plaintiffs to file an

12  amended complaint naming 604471 Ontario and Reid as defendants is

13  the same as that set forth in the court's previous order.

14      Accordingly, the court hereby orders as follows:

15  [1] Plaintiffs' First Amended Complaint is dismissed without

16      prejudice.

17  [2] No later than January 10, 2013, plaintiffs may file an

18      amended complaint that names both R. Allan Reid and 604471

19      Ontario, Inc. as defendants.

20  [3] Defendant R. Allan Reid's motion to dismiss plaintiffs'

21      First Amended Complaint is DENIED as moot.

22  IT IS SO ORDERED.

23  DATED:  November 26, 2012.

24

25                                          _____
                                            LAWRENCE K. KARLTON
26                                          SENIOR JUDGE
                                            UNITED STATES DISTRICT COURT

                                    23