UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILSON, an individual, and JACK WHITE, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METALS USA, INC., a Delaware Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | No. 2:12-CV-00568-KJM-DB<br><br>ORDER |

This matter is before the court on the unopposed motion by defendant Metals USA Inc., and plaintiffs James Wilson and Jack White's (collectively "Representative Plaintiffs") for final class action settlement approval. The court held a hearing on the matter on April 24, 2020, at which Gene Stonebarger and Richard Lambert appeared for plaintiffs and Adrian Sawyer and Cole Ramey appeared for defendant. As explained below, the court GRANTS plaintiffs' motion for attorney's fees, costs and incentive awards and GRANTS final approval of the class action settlement.

/////

/////

/////

1

I.  BACKGROUND

   A.  Procedural Background

This court previously set forth the detailed factual and procedural history of this matter in its March 12, 2019 order on plaintiffs' unopposed motion for preliminary approval of the proposed class action settlement, and so the court does not repeat all of that information here. Prelim. Approval Order at 2–4, ECF No. 149.

Plaintiffs James Wilson and Jack White allege defendant Metals USA, Inc. ("Metals") is liable as a successor-in-interest to Dura-Loc Roofing Systems Limited ("Dura-Loc") for the defective design and manufacture of roofing tiles following Metals' purchase of Dura-Loc's assets in 2006. *See* Third Am. Compl. ("TAC") ¶¶ 4, 65, 71, 95, 129, ECF No. 78. Metals allegedly breached a duty to disclose the defective nature of the tiles. *Id*. ¶¶ 142, 149, 159. On March 5, 2012, plaintiffs filed this class action suit for fraudulent concealment/non-disclosure and breach of warranty alleging Metals violated various provisions of the California Civil, Commercial and Business and Professions Codes. *See generally* TAC. In the more than eight years this case has been pending, "there have been hundreds of written discovery requests and more than twenty (20) depositions." Mot. for Final Approval ("Mot.") at 6, ECF No. 160; *see generally* Richard Lambert Decl., ECF No. 160-2.

On August 31, 2018, plaintiffs filed an unopposed motion for preliminary approval of the class action settlement. Mot. for Prelim. Approval, ECF No. 140-1. On October 11, 2018, the court directed the parties to provide their mediation statements/briefs in camera for the court's review prior to preliminary approval. ECF No. 142. On October 19, 2018, the court held a hearing on the motion for preliminary approval and took the matter under submission. On March 12, 2019, the court issued an order raising several concerns and granting the motion for preliminary approval of the settlement and of the proposed notice to the putative class. *See* Prelim. Approval Order at 10–11 ("The court cautions that final approval will require more information addressing [] concerns and is conditioned on the court's careful review and acceptance of the actual proposed distribution of funds based on claimants' response to the notice to be provided.").

1       Plaintiffs now move the court for final approval of the unopposed motion for class
2  action settlement. Mot. at 6. Plaintiffs also move for attorney's fees, costs and an enhancement
3  award for the named plaintiffs, as the parties stipulated in the settlement. Fees Mot. Mem. at 2,
4  ECF No. 150-1.

   B.   <u>Settlement Agreement</u>

6       The details of the proposed settlement agreement are laid out in the court's
7  previous order on the motion for preliminary approval. *See generally* Prelim. Approval Order.
8  The settlement includes all the modifications the court encouraged and preliminarily approved.
9  Class counsel's request for attorneys' fees will not exceed 25 percent of the gross settlement
10 amount and will be subject to a lodestar cross-check, as opposed to the 69.6 percent previously
11 sought. Prelim. Approval Order at 9; Settlement, ECF No. 140-3. Also following preliminary
12 approval, the parties reduced their hourly rates to coincide with those previously approved by this
13 court in other cases. Fees Mot. Mem. at 17:26–28 (class counsel submitted a "lodestar of
14 $1,040,810 (to date), which applies the following hourly rates: (i) Mr. Stonebarger, $475.00; (ii)
15 Mr. Lambert, $400.00; (iii) Ms. Yan, $250.00; and (iv) paralegals, $100.00"). At the same time,
16 the parties have retained the reversionary provision permitting funds to revert to defendant
17 depending on the proportion of class members who opt out or in. Mot. at 21–28; Settlement § 2.1
18 ("The Settlement Payment is made available by MUSA on a reversionary basis."), § 7.6
19 (calculating individual settlement amounts for each class member based on "number of affected
20 panels as identified by the eligible claimant . . . multiplied by $10, up to and not to exceed the
21 maximum settlement payment of $3,000"). The parties also maintain their requests for incentive
22 awards for the representative plaintiffs. *Id*. at § 1.9 ("James Wilson will request $25,000.00; . . .
23 Jack White will seek $14,000.00.").

24 II.  <u>CLASS CERTIFICATION</u>

25      Class certification in the settlement context is appropriate only if Rule 23's
26 certification requirements are satisfied. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591,
27 620 (1997) (court owes "undiluted, even heightened, attention" to class certification requirements
28 in settlement context); Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment

3

("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."). On July 5, 2016, the court certified the proposed class, defined as "All individuals and entities that own homes or other structures located in the State of California on which Dura-Loc Roofing Systems Limited's Continental, Shadowline, or Wood Shake stone coated steel roof shingles were installed during the period of time beginning July 1, 1996 through May 12, 2006." Cert. Order at 25, ECF No. 93. The court concluded the class satisfied the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a), *id*. at 12–23, as well as the predominance and superiority requirements of Rule 23(b)(3), *id*. at 24–25.

Nothing before the court suggests its prior certification was improper. The court therefore certifies the class for purposes of final approval of the settlement agreement.

III.     FINAL SETTLEMENT APPROVAL

As the court explained at the preliminary approval stage, under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). To determine whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including:

> (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d at 946). These factors substantively track those provided in the 2018 amendments to Rule 23(e)(2), which took effect December 1, 2018. Rule 23(e) now dictates that a court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

4

      (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

      (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The advisory note to the Rule 23(e)(2) amendment recognizes, "each circuit has developed its own vocabulary for expressing these concerns" regarding whether a proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the newly codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2019) (noting Rule 23(e) "essentially codified [federal courts'] prior practice"). Moreover, the Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the court draws on the Ninth Circuit's longstanding guidance as well as the Rule 23(e)(2) factors in determining whether the settlement is "fair, reasonable, and adequate." The court addresses the Rule 23(e) factors below.

  A.  <u>Class Representatives and Class Counsel Have Adequately Represented Class</u>

    The court previously concluded the two named plaintiffs and their counsel were "adequate representatives" when it granted plaintiffs' motion for class certification of their claim for breaches of express warranty under California Commercial Code section 2313. Cert. Order at 12, ECF No. 93. The record at this stage provides no reason to doubt that conclusion. *See, e.g.*, James Wilson Decl. ¶ 5, ECF No. 150-5 (noting his purchase of Dura-Loc Tiles and choice not to

5

1  settle his case to represent other individuals like him); Jack White Decl. ¶ 5, ECF No. 150-6
2  (same); Richard Lambert Decl. ¶¶ 3–5, ECF No. 160-2 (describing over eight years of
3  involvement as class counsel litigating every aspect of this case).

4        B.      <u>Proposal Negotiated at Arm's Length</u>

5        In its Preliminary Approval Order, the court considered whether the proposed
6  settlement "appear[ed] to be the product of serious, informed, non-collusive negotiations[.]"
7  Prelim. Approval Order at 5–6 (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D.
8  Cal. 2016)).  The court was satisfied the settlement was the product of an arms-length negotiation,
9  especially given that the parties participated in private mediation with two experienced mediators.
10 *Id.* at 8 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)
11 (process leading to settlement's terms ensures those terms are result of vigorous, arms-length
12 bargaining)).  For these same reasons, the court finds this factor supports approving the settlement
13 at this stage.

14       C.      <u>Relief Provided for Class Is Adequate</u>

15       In analyzing the adequacy of the relief at the preliminary approval stage, the court
16 expressed "strong and serious reservations" that the suggested relief might be inadequate, given
17 (1) the amount of incentive payments for named plaintiffs, (2) the reversionary nature of the
18 settlement, (3) the pro rata decrease to each class member's payment if too many persons were to
19 file claims, and (4) the claims for attorney's fees.  Prelim. Approval Order at 11.

20       As noted, attorney's fees are now capped at the Ninth Circuit's presumptively
21 appropriate 25 percent benchmark, *see In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th
22 Cir. 2018), so are not obviously disproportionate.

23       However, there remains a reversionary provision.  *See* Settlement § 2.1 ("The
24 settlement payment is made by MUSA on a reversionary basis.").  As foreshadowed in its
25 previous order, the court made clear the parties needed to be prepared at this stage to provide
26 "clear information on the total amount of any windfall and any other information to place any
27 windfall in a context demonstrating its fairness or unfairness."  Prelim. Approval Order at 12
28 (citing *La Parne v. Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606,

1    at *4 (C.D. Cal. Nov. 29, 2010)).  Plaintiffs' counsel observes "reversion to the defendant may be
2    appropriate when deterrence is not a goal of the statute or is not required by the circumstances."
3    Mot. at 21 (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.
4    1990)).  As the court in *Six Mexican Workers* explained, "The district court's choice among
5    distribution options should be guided by the objectives of the underlying statute and the interests
6    of the silent class members."  904 F.2d at 1307.  Moreover, "the court's alternatives include[]:
7    1) cy pres or fluid distribution, 2) escheat to the government, and 3) reversion to defendants."  *Id*.
8    Here, class counsel reports "[f]ollowing the Notice set forth in the Settlement, the Class has
9    claimed a total value of $544,329.25"out of the "$2,800,000 Maximum Settlement Fund."
10   Richard Lambert Decl. ¶¶ 37, 38.  Counsel have also provided information placing the amount of
11   reversion, nearly $2 million, in a context that demonstrates its fairness.  *See id*. ¶¶ 20–36 (noting
12   robust notice program to potential class members, and that defendant "did not design, produce,
13   manufacture, or distribute the Tiles that are alleged to be defective in this Litigation."); *id*. ¶¶ 27,
14   28.  On this record, the court concludes the "reversion" provision is not a bar to final approval of
15   the settlement.

16          At the preliminary stage, the court was also "troubled by the proposed potential for
17   a pro rata decrease in individual settlement amounts if too many people file claims."  Prelim.
18   Approval Order at 13 (citing *In re Bluetooth Headset Prods. Liab. Litig.* (*Bluetooth*), 654 F.3d
19   935, 946 (9th Cir. 2011)); Settlement §§ 7.6, 7.9.  In light of the number of persons filing claims
20   and the total value the Class has claimed, counsel asserts the "Court's concern with regard to a
21   decrease or pro rata payment to the Class is non-existent."  Richard Lambert Decl. ¶ 37.  The total
22   value of the claims made to date will not come close to the total settlement amount of $2,800,000,
23   and the value of each affected individual settlement will not be decreased on a pro rata basis.
24   Therefore, there is no pro rata decrease in settlement payments to act as a bar to final approval of
25   the settlement.

26          The court also noted its concern with the "wide discrepancy between the sum of
27   $9,400,000 plaintiffs sought going into mediation and the resulting maximum settlement sum of
28   $2,800,000."  Mot. at 10.  In more fully explaining this discrepancy counsel states "[t]he

7

$2,800,000 Maximum Settlement Fund was the highest amount the Class Representatives and Class Counsel were able to reach after four (4) arduous mediation sessions" and defendant "expressly claimed it would go no higher." Richard Lambert Decl. ¶ 38. Specifically, counsel asserts "[$9,400,000] was for Tiles sold all over the *world* not just California – which is the scope of the Settlement Class herein." *Id*. (emphasis in original). In explaining how the parties reached their settlement figure, plaintiffs' counsel states, "Despite the decrease in the amount sought versus the amount agreed upon, Class Representatives and Class Counsel aggressively negotiated with [defendant] in an effort to achieve the maximum value for the Class." *Id*. ¶ 40. Counsel even offers that the private mediator "has made himself available to testify." *Id.* Given the additional detail provided now, the court does not need to hear from the mediator. The court finds the settlement amount is within the range appropriate for approval.

Finally, at the preliminary stage, the court also expressed concern about the settlement provisions that provide named plaintiffs Wilson and White incentive payments of up to $25,000 and $14,000, respectively; specifically, the court noted these amounts appeared disproportionate to the recovery of individual class members. Prelim. Approval Order at 11. The court considers the parties' more substantial justification for these proposed awards in discussing plaintiffs' motion for attorneys' fees below, and ultimately determines the request is reasonable given the facts of this case. Therefore, the incentive payments provision is not a bar to final approval of the settlement.

  D. <u>Proposal Treats Class Members Equitably Relative to Each Other</u>

The individual settlement amount for each class member is determined by "the number of affected panels as identified by the eligible claimant . . . multiplied by $10, up to and not to exceed the maximum settlement payment of $3,000 for any eligible claimant." Settlement § 7.6. "If the eligible claimant purchased their roof more than fifteen (15) years before the final approval order, the settlement payment . . . shall be reduced based upon the proration schedule in the eligible claimant warranty." *Id*. § 7.6.2. The court finds this method of distribution treats class members equitably relative to each other.

/////

1    As previously noted, the settlement treats the named plaintiffs differently than the
2 other class members, by affording Wilson and White incentive payment of $25,000 and $14,000,
3 respectively.  Fees Mot. Mem. at 31.  The court analyzes these incentive payments separately
4 below.

       E.      <u>Conclusion</u>

For these reasons the court finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

IV.      <u>ATTORNEY'S FEES, COSTS AND INCENTIVE AWARDS</u>

      A.      <u>Request for Attorney's Fees</u>

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties have agreed on an amount, the court must award only reasonable attorneys' fees.  *Bluetooth*, 654 F.3d at 941.

          1.      <u>Ninth Circuit Benchmark</u>

The Ninth Circuit has set a 25 percent benchmark for the award of attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942).  The Ninth Circuit has also approved the use of lodestar cross-checks to determine the reasonableness of a particular percentage recovery of a common fund.  *Seguin v. Cty. of Tulare*, No. 116CV01262DADSAB, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

The proposed settlement provides for attorney's fees of $979,545.43, which is 34.9 percent of the Class Gross Settlement Amount of $2,800,000.[1]  Richard Lambert Decl. ¶ 42.  A

---

[1] Class counsel notes an alternative value of the Settlement is approximately $4,015,000 ($2,800,000 to the Class, $1,150,000 in fees, costs, and incentive awards, and $65,000 in administration costs).  Under this calculation, Class counsel's request for $983,228.20 in fees which fall within the benchmark established by the Ninth Circuit as it constitutes approximately

slightly different figure for attorney's fees, $983,228.20, which is 35.1 percent of the Class Gross Settlement Amount, is calculated by the parties for a requested upward variance. Fees Mot. Mem. at 22:3–5. Counsel notes defendant has not opposed or objected to a gross payment to class counsel "in the amount of $1,111,000.00 . . . for fees and costs." *See* Settlement § 6; *id*., Ex. B (Notice of Class Settlement) at 47, EFC No. 140-3. And counsel submits, "Only in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled." *Velez v. Wynne*, 220 F. App'x 512, 514 (9th Cir. 2007) (emphasis in original) (quoting *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)).

Plaintiffs and class counsel argue *Bluetooth* does not apply to this case because the settlement agreement was not "negotiated prior to formal class certification." 654 F.3d at 946; Fees Mot. Mem. at 16.

Given its prior strong reservations about "disproportional payment of attorney's fees and costs separate from payments to the class," Prelim. Approval Order at 13, the court conducts a lodestar cross-check to determine whether the attorneys' fees request is reasonable. *Id*. (citing Settlement §§ 2.3, 8.1).

      2. <u>Lodestar Cross-Check</u>

Application of the lodestar method supports approval here. In calculating an attorneys' fees award using this method, a court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted). This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the

---

24.4 percent of the total value provided to the Class in the Settlement (i.e., $983,228.20 (fees)/$4,015,000 (total value) = 24.4%). *See* Lambert Fees Decl. ¶ 27, ECF No. 150-2.

issues presented, and the risk of nonpayment." *Bluetooth*, 654 F.3d at 941–42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).  "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

a. Lodestar Amount

As part of their separate motion for attorneys' fees, class counsel have provided the following breakdown of their time spent in this case and their regular rates per hour:

| Attorney | Hours Worked | Rate | Total Fees |
|---|---|---|---|
| Gene J. Stonebarger | 118.8 | $475.00 | $56,430.00 |
| Richard D. Lambert | 1,926.8 | $400.00 | $770,720.00 |
| Elaine W. Yan | 271.4 | $250.00 | $67,850.00 |
| Paralegals | 1,458.1 | $100.00 | $145,810.00 |
| **Totals** | 3,777.7 | | $1,040,810.00 |

Lambert Fees Decl. ¶ 11; *see generally* Fees Mot. Mem.  Counsel have also provided declarations in support of their hourly rates, evidence their rates are in line with those in the relevant community, *see Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and itemized records to support the number of hours they worked, *see Hensley*, 461 U.S. at 437.  The court finds counsel has provided adequate detail to conduct a lodestar cross-check here.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." (citation omitted)); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (citation omitted)).  Given the extent of motion practice in this case, including two motions to dismiss, ECF Nos. 22, 50, a contested motion to certify the class, ECF No. 81, a contested motion for summary judgment, ECF No. 102, a motion for preliminary approval of the settlement, ECF No. 140, and

the instant motions for final approval of the settlement and for attorneys' fees, ECF Nos. 150, 160, as well as the time required for mediation, the court finds 3,777.7 is a reasonable number of total hours, as allocated across attorneys, to use for the lodestar cross-check.

Regarding the attorneys, Elaine W. Yan is an associate with roughly three years of experience. Fees Mot. Mem. at 21. Courts in the Eastern District have previously accepted hourly rates between $370 and $495 for associates, though lower rates are more commonly approved and rates vary with experience. *Milburn v. PetSmart, Inc.*, No. 118CV00535 DAD SKO, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019) (citing, *inter alia*, *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *22 (E.D. Cal. July 12, 2012) (awarding $300 per hour for associates with less than four years' experience)). The court finds the proposed rate of $250 is a reasonable hourly rate for Ms. Yan.

Gene J. Stonebarger and Richard D. Lambert are both partners. The rates proposed by plaintiffs, namely $475 and $400 for partners, are in line with those charged in this district. As noted in the federal cases plaintiffs cite, "Courts in the Eastern District of California have regularly approved hourly rates of $400 or more for partners or experienced attorneys" *Estrada v. iYogi, Inc.*, No. CV21301989WBSCKD, 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016); *see also Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 460 (E.D. Cal. 2013) (same); *Turk v. Gale/Triangle, Inc.,* No. 2:16-CV-00783-MCE-DB, 2017 WL 4181088, at *4 (E.D. Cal. Sept. 21, 2017) ($400/hour range common, "with some courts noting a higher range for partners, commensurate with experience").

Mr. Stonebarger proposes a rate of $475 per hour for his time, given his 19 years of experience as an attorney, primarily in civil litigation. Fees Mot., Ex. A (Stonebarger Resume), ECF No. 150-3, at 2–4; Fees Mot. Mem. at 20. In light of other decisions awarding similar rates to partners with as much as 19 years of experience, the court finds $400 per hour is a reasonable rate for lodestar purposes. *See, e.g.*, *Estrada v. iYogi, Inc.*, 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for partners with as much as 19 years of experience). Accordingly, the court applies a rate of $400 per hour for Mr. Stonebarger's time, which reduces his total fees for the lodestar calculation to **$47,520**.

Mr. Lambert has nearly 12 years of experience as an attorney and has served as co-lead class counsel in seven cases. Fees Mot., Ex. A (Lambert Resume), ECF No. 150-3, at 5–11; Fees Mot. Mem. at 21. In *Z.F. v. Ripon Unified Sch. Dist.*, the court noted, "[p]revailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation." (citation omitted)). *Z.F. v. Ripon Unified Sch. Dist.*, No. 2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017). The court applies a rate of $300 per hour for Mr. Lambert's time. This reduces Mr. Lambert's total fees for the lodestar calculation to **$578, 040**, and the total lodestar amount, after reducing both Mr. Stonebarger's and Mr. Lambert's fees, to **$839,220**.

Class counsel avoided more protracted litigation by successfully negotiating a settlement and has diligently pursued approval of that settlement by this court through multiple rounds of motion practice. To reach plaintiffs' counsel's total requested fee of **$983,228.20** requires applying a multiplier of roughly **1.2** to the lodestar amount of **$839,220.00.** A multiplier of 1.2 is within the range of multipliers accepted by the Ninth Circuit. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 & n.6 (reviewing approved fees from 24 cases and finding 20 of 24 fell within 1.0–4.0 range, and 13 of twenty-four fell within 1.5–3.0 range) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")). The court evaluates additional factors discussed in *Bluetooth* to determine whether a 1.2 lodestar multiplier is justified in this case. *See Bluetooth*, 654 F.3d at 941–42 (citing relevant factors as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment").

      b. *Bluetooth* Factors

Class counsel achieved a favorable result and generated a significant benefit for the class in the form of a potential gross settlement amount of $2,800,000. Fees Mot. Mem. at 11; *see Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). The settlement provides for $2,800,000 to the Class. Lambert Fees Decl. ¶ 26. As further evidence of a favorable result, counsel points to the fact attorneys' fees,

costs and requested incentive awards are to be paid separate and apart from the class benefit. *Id.* This factor strongly favors a positive multiplier.

As for the third factor, the record suggests the issues presented by plaintiffs' claims were novel and unique due to a lack of prior rulings on issues presented in this case and particularly complex compared with other breach of warranty class actions. *See* Fees Mot. Mem. at 25. This factor also favors a positive multiplier.

Finally, class counsel has represented the class on a contingency basis. *Id.* at 19–20. Consequently, they have faced a substantial risk of nonpayment, especially in light of the evolving legal landscape during contested motion practice on class certification and summary judgment. *Id.* at 19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (holding Cal. Code Civ. Proc. § 425.16 allows a trial court to include a fee enhancement to compensate the attorney who undertakes representation on contingency at risk of nonpayment or delayed payment)). This factor favors a positive multiplier.

All four factors favor a positive multiplier, and the multiplier of 1.2 is at the low end of the acceptable range sanctioned by the Ninth Circuit. Accordingly, based on the lodestar cross-check method, the court finds with minor reductions as described above the requested award of fees is reasonable.

B.      Request for Costs

The court also must determine an appropriate award of costs and expenses. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468–69 (C.D. Cal. 2014) (internal quotation marks and citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (citation omitted).

Here, counsel represents that combined unreimbursed costs total $127,771.80, and include filing fees, postage charges, travel expenses, mediation fees, expert fees and claims administrator fees. Fees Mot. Mem. at 28; Lambert Fees Decl. ¶ 29. The court finds these costs are reasonable and are of the type routinely approved by courts for reimbursement. *See Barbosa*,

297 F.R.D. at 454 (costs associated with travel, photocopying and mediation fees "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which included "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses"); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014) (approving costs, which included "mailing costs; expert fees; travel expenses; and mediation fees.").

### C. Incentive Award

The two named plaintiffs request $25,000 and $14,000, respectively, as incentive awards. Fees Mot. Mem. at 12. Representative plaintiffs, as opposed to designated class members, are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Whether to authorize an incentive payment to a class representative is a matter within the court's discretion. *See Adams v. City & Cty. of Honolulu*, No. CV 12-00667 BMK, 2017 WL 3880651, at *1 (D. Haw. Sept. 5, 2017). In determining whether to approve an enhancement payment, courts may consider the following factors: (1) "the risk to the class representative in commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative;" (4) "the duration of the litigation"; and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citation omitted). Various courts in this circuit, including this court, have adopted the *Van Vranken* factors. *See, e.g., Zakskorn v. Am. Honda Motor Co., Inc.*, 2:11-CV-02610-KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015). In determining the amount of time and effort spent by a class representative, the court will examine "'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" *Flores v. ADT LLC*, No. 116CV00029 AWI JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (quoting *Reyes v. CVS Pharmacy*, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)). Courts will also consider

the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947.

Here, plaintiffs James Wilson and Jack White have submitted two declarations in which they each explain their participation in the case and estimate they spent 124 and 73 hours, respectively, assisting counsel over the eight years this case has been active. James Wilson Decl. ¶ 2, ECF No. 150-5; Jack White Decl. ¶ 2, ECF No. 150-6. They both spent time "researching the allegations," reviewed the relevant pleadings in this action, and engaged in numerous discussions with the attorneys regarding the status of this action and its progress since becoming class representatives. James Wilson Decl. ¶ 2; Jack White Decl. ¶ 2.

With respect to the first factor, plaintiffs contend that, by initiating this case, they assumed the risk of a judgment against them and personal liability for an award of costs to defendant in the event of an adverse outcome. James Wilson Decl. ¶ 8; Jack White Decl. ¶ 8. As discussed at hearing, the requested incentive awards represent the specific amount each respective plaintiff was offered by defendant seven years ago to resolve each respective claim. Fees Mot. Mem. at 31. Both named plaintiffs rejected defendant's initial settlement offer because "each understood he was representing more than his own interests" and was committed to representing the interests of the class. James Wilson Decl. ¶¶ 5–6; Jack White Decl. ¶¶ 5–6. Thus, the first factor weighs in favor of granting an incentive award.

As for the second factor, nothing in the record suggests the litigation gained any particular notoriety and plaintiffs do not suggest their participation caused any personal difficulties, apart from costing them time. Therefore, the second factor does not necessarily support an incentive award.

As for the third factor, as mentioned, plaintiffs estimate they spent 124 and 73 hours, respectively, assisting in the litigation. James Wilson Decl. ¶ 2; Jack White Decl. ¶ 2. Because plaintiffs expended significant efforts and were personally involved in the litigation, this factor weighs in favor of granting each an incentive award.

With respect to the fourth factor, plaintiffs initiated the case on March 5, 2012, settled on August 24, 2018, and requested preliminary approval on August 31, 2018. The court

subsequently granted the motion for preliminary approval, roughly six years after the filing of the complaint. Thus, the fourth factor weighs slightly in favor of granting an incentive award. *Cf. Van Vranken*, 901 F. Supp. at 296, 299 (where the class representative's "participation lasted through [roughly thirteen] years of litigation," a $50,000 incentive award was appropriate); *see also Ogbuehi*, 2015 WL 3622999, at *14 (finding fourth factor neutral where litigation settled after only roughly one year).

Finally, with respect to the fifth factor, the personal benefit enjoyed by a plaintiff, neither named plaintiff appears to gain any other benefit beyond what he will gain as a class member. *See generally* Settlement; *see also In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. at 472 ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member."). This factor weighs in favor of granting an incentive award.

On balance, the relevant factors favor granting an incentive award. The requested incentive awards of $25,000 and $14,000 are on the high end of what is typically approved, even considering the number of hours plaintiffs spent in this case. S*ee, e.g., Bond*, 2011 WL 2648879, at *2, 15 (approving $11,250 incentive payment to each of two named plaintiffs as part of $2,250,000 gross settlement); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, *9 (E.D. Cal. Feb. 27, 2017) (awarding enhancement payment of $8,000 to each plaintiff who conducted 30 to 40 hours of work); *Rodriguez v. Kraft Foods Group, Inc.*, 2016 WL 5844378, *16 (awarding enhancement payment of $10,000 to plaintiff who conducted 40 hours of work on case); *Ross v. U.S. Bank Nat'l Ass'n,* Civ. No. 3:07-2951 SI, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and risk that being a class representative would harm their reputation).

Furthermore, the total combined incentive payments equal $39,000, representing roughly 1.4 percent of the potential $2,800,000 gross settlement amount. Settlement § 7.6. As a percentage of the potential gross settlement amount, the incentive award is on the high end of what is commonly approved, and as compared to the average individual settlement amounts, the

1  ratio of individual to incentive award also is high.  *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947 (awarding $5,000 enhancement payment to each of nine named plaintiffs, which was roughly 417 times greater than average award but, in aggregate, only 0.17% of gross settlement); *Rodriguez*, 2016 WL 5844378, at *16 (awarding enhancement payment of $10,000, which was approximately 11 times average award and less than 0.5% of gross settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (awarding enhancement payment of $10,000, approximately 50 times average award and less than 0.02% of gross settlement).

All things considered, given the length of the case and the named plaintiffs' substantial involvement, the court finds the incentive awards are reasonable and grants the total incentive payment.  While plaintiffs did not risk harm to their reputation, *Ross,* 2010 WL 3833922, at *3, they consciously chose to sacrifice a lump sum of money early on to continue with the case, facing an uncertain outcome and great personal exposure, because each felt compelled to represent the class.  Fees Mot. Mem. at 31.  Given the uncertain outcome, they accepted the risk of losing and being held responsible for the prevailing party's costs.  *Id*.  Accordingly, the court approves this element of the settlement.

V.      CONCLUSION

In light of the foregoing analysis, plaintiffs' motion for final approval of the class settlement, ECF No. 160, and motion for attorneys' fees, costs and enhancement awards, ECF No. 150, are GRANTED.  The distribution of settlement funds shall be as follows:

1. Total fees awarded to plaintiffs: **$983,228.20;**
2. Mr. James Wilson's incentive award: **$25,000;**
3. Mr. Jack White's incentive award: **$14,000;**
4. Mr. Stonebarger's total fees award: **$47,520**;
5. Mr. Lambert's total fees award: **$578, 040;**
6. Ms. Elaine W. Yan's total fees award: **$67, 850;**
7. Paralegals' total fees award: **$145, 810;**
8. Costs: **$127,771.80.**

1   All individual settlement payments shall be made within fourteen (14) days of the
2   filed date of this order, and all other distributions shall be made within thirty (30) days of the filed
3   date of this order.
4   The Clerk of Court is directed to CLOSE the case.
5   IT IS SO ORDERED.
6   DATED: February 11, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE